IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 7, 2001 Session

## GERALD B. WILLIAMS v. CORA RITA WILLIAMS

**Appeal from the Probate & Family Court for Cumberland County**
**No. 12587     Steven C. Douglas, Judge**

**FILED JULY 10, 2001**

**No. E2000-02782-COA-R3-CV**

In this divorce action, Gerald B. Williams ("Plaintiff") appeals the Trial Court's award of alimony *in futuro* in the amount of $800 per month to Cora Rita Williams ("Defendant"). The parties were married thirty-eight years. While Plaintiff earns approximately $32,000 per year, Defendant's income is substantially less at approximately $11,220. The Trial Court specifically found that Defendant could not be rehabilitated. Plaintiff contends on appeal that the Trial Court erred in awarding any alimony to Defendant because the proof at trial did not establish Defendant's need for financial support and Plaintiff's ability to pay alimony. Plaintiff also argues that if the award of alimony is appropriate, the amount is excessive. We modify the alimony from $800 to $600 per month, and affirm the judgment as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate & Family Court Affirmed as Modified; and Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, J., joined.

Brett A.York, Crossville, Tennessee, for the Appellant, Gerald B. Williams.

S. Roger York, Crossville, Tennessee, for the Appellee, Cora Rita Williams.

# OPINION

## Background

After a nearly thirty-eight-year marriage, Plaintiff and Defendant obtained a divorce.[1] Plaintiff, age 60 at the time of the divorce, has a high school diploma and is employed full-time by Amerigas. Defendant, who was 56 years old at the time of trial, completed the eighth-grade and has a GED. Defendant is employed as a teaching assistant and a bus attendant for special needs students by the Cumberland County School System.

The parties stipulated the grounds for divorce and jointly submitted a list of marital assets. The only issues for the Trial Court's determination were the division of marital property and alimony.

The Trial Court, in its Final Order, held that Plaintiff's yearly income is between $33,000 and $36,000. The proof contained in the record, however, establishes Plaintiff's gross income to be $32,000. The Trial Court apparently used statements made by one of the attorneys at a post-trial motion hearing that Plaintiff was given a raise in 1999 in setting Plaintiff's salary at a high range of $36,000. We must rely upon evidence contained in the record and not on counsel's statements. *See Outpatient Diagnostic Ctr. v. Christian*, No. 01A01-9510-CV-00467, 1997 WL 210842, at * 2 (Tenn. Ct. App. Apr. 30, 1997). We refer to the parties' incomes and expenses in round numbers.

Plaintiff's stated monthly expenses total approximately $1,120, not including $96 per month for medical, dental, life and long-term disability insurance which is automatically deducted from his paycheck before taxes. Plaintiff, however, anticipated that he soon would have to replace his current ten year old vehicle. Plaintiff testified that if he has to purchase another vehicle, he anticipated that his monthly expenses would then be increased by $400 to total $1,520 per month. The record on appeal shows that Plaintiff's monthly net income, after deducting the $96 monthly insurance cost only once, is approximately $1,840. After subtracting his other expenses, not including the possible new automobile payment, Plaintiff has $720 per month in disposable income remaining.

As a teaching assistant, Defendant earns approximately $7,600 per year and at the time of the divorce, was earning an additional $150 to $200 every two weeks, or approximately $400 gross income per month, for assisting a special needs student on the school bus. Defendant's position as a bus attendant, however, was dependent solely upon the health of the student and could be abolished at any time. Both of Defendant's positions require her to work only during the nine-month period that school is in session. Defendant does not have regular employment during the summer months but has sporadically held odd jobs during that time. While the record before us is at best confusing, it appears that Defendant has net income from her teaching assistant job of $325

---

[1] In her Answer, Defendant counterclaimed for divorce as well.

every two weeks during the nine month school year, or $488 net income per month calculated over twelve months. There is no proof in the record as to what Defendant's net is of the approximately $400 gross income per month for nine months for assisting the special needs student on the school bus.

As for Defendant's expenses, Defendant entered into evidence a list of monthly expenses which did not entirely correspond with her trial testimony. Based upon the proof in the record and taking into account both Defendant's testimony and her list of monthly expenses, Defendant's average, bare bone monthly expenses total approximately $720. We note that Defendant's exhibit listing her monthly expenses stated "unknown" as to many potential expenses, such as house or car repairs.

The Trial Court initially awarded alimony in the amount of $925 per month to Defendant, stating that it was attempting to get the parties "on approximately the same footing." In its Final Order, the Trial Court held that an award of rehabilitative alimony would not be appropriate due to the length of the parties' marriage, Defendant's age and her job skills. Instead, the Trial Court ordered that the alimony awarded to Defendant would be "permanent in nature." After the Trial Court rendered its Opinion but before the Final Order was entered, Plaintiff orally moved to reconsider. Thereafter, the Trial Court reduced the alimony award to $800 per month to begin in October 2000. In its Final Order, the Trial Court held that although it found that Defendant was entitled to $875 per month in alimony, Defendant announced her satisfaction to the Trial Court with $800 per month instead. With respect to the division of marital property, the Trial Court ordered essentially a 50/50 distribution, with Defendant keeping the parties' marital residence and Plaintiff keeping most of his 401k retirement account plus any future earnings. Plaintiff appeals. We modify the judgment solely as to the amount of alimony.

**Discussion**

On appeal and although not stated exactly as such, Plaintiff raises the following issues: 1) that the Trial Court erred in awarding alimony because it failed to properly apply the factors of Tennessee Code Annotated § 36-5-101(d)(1); and 2) if the award of alimony was proper, the amount of alimony is excessive. Plaintiff does not dispute the Trial Court's determination that Defendant cannot be rehabilitated. Defendant raises no issues on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). The Trial Court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

This Court has held that "[t]rial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration." *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). "The amount of alimony awarded is largely a matter left

to the discretion of the trial court, and the appellate courts will not interfere except in the case of an abuse of discretion." *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001).

In this matter, the Trial Court, specifically found that rehabilitative alimony was not appropriate and awarded $800 per month in permanent alimony to Defendant. Although "the legislature has demonstrated a preference for an award of rehabilitative alimony[,]" Tenn. Code Ann. § 36-5-101(d)(1), the relevant statute for alimony, does contemplate a long-term award of alimony, providing:

> Where there is such relative economic disadvantage and rehabilitation
> is not feasible in consideration of all relevant
> factors . . . then the court may grant an order for payment of support
> and maintenance on a long-term basis . . . .

*Crabtree v. Crabtree*, 16 S.W.3d 356, 358 (Tenn. 2000); Tenn. Code Ann. § 36-5-101(d)(1). "The purpose of [alimony *in futuro*] is to provide financial support to a spouse who cannot be rehabilitated." *Burlew v. Burlew*, 40 S.W.3d at 471.

While all relevant factors must be considered, need and the ability to pay are the critical factors when setting the amount of an alimony award. *Anderton v. Anderton*, 988 S.W.2d at 683. Discussing the intent behind alimony, our Supreme Court has held:

> "the purpose of spousal support is to aid the disadvantaged spouse to
> become and remain self-sufficient and, when economic rehabilitation
> is not feasible, to mitigate the harsh economic realities of divorce."

*Burlew v. Burlew*, 40 S.W.3d at 470-71 (quoting *Anderton v. Anderton*, 988 S.W.2d at 682).

When determining whether a spouse should receive support and what type of alimony is warranted, trial courts are to apply the factors outlined in Tenn. Code Ann. § 36-5-101(d)(1), which provides:

> In determining whether the granting of an order for payment of
> support and maintenance to a party is appropriate, and in determining
> the nature, amount, length of term, and manner of payment, the court
> shall consider all relevant factors, including:
>
> (A) The relative earning capacity, obligations, needs, and financial
> resources of each party, including income from pension, profit
> sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and
> opportunity of each party to secure such education and training, and

the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).

On appeal, Plaintiff contends that the Trial Court erred in awarding alimony *in futuro* to Defendant because it failed to apply properly the factors enumerated in Tenn. Code Ann. § 36-5-101. Plaintiff argues that the Trial Court's statement in the transcript that it was attempting to place the parties on the "same footing" is evidence that the Trial Court did not follow the alimony statute. It is also Plaintiff's contention that there was no proof regarding the two most important factors in this statute, need and ability to pay. *See Anderton v. Anderton*, 988 S.W.2d at 683.

We agree that attempting to get the parties on the "same footing" is not one of the specific considerations listed in Tenn. Code Ann. § 36-5-101(d)(1). It can be argued, however, that such a goal is appropriate under this statute as being a factor "necessary . . . [in considering] the equities between the parties." Tenn. Code Ann. §36-5-101(d)(1)(L). We also agree that "the need of the disadvantaged spouse" and "the ability of the obligor spouse to provide support" are the most important factors of the alimony statute. *Burlew v. Burlew*, 40 S.W.3d at 470.

We will first address Plaintiff's contention that Defendant has no need for alimony because her monthly income exceeds her monthly expenses. Plaintiff contends that Defendant's monthly expenses total only $400 per month and that her monthly income is $1,150. These allegations, however, are not supported by the record, and Plaintiff has severely miscalculated Defendant's average monthly income as well as her expenses.[2]

Defendant's listed monthly expenses total approximately $720 with many other expenses listed as "unknown." Although the record is confusing, Defendant's average monthly net income from her teaching assistant job, spread over twelve months, is approximately $488. Defendant has additional gross income from her bus assistant job of approximately $300 per month spread over twelve months. We note that this latter figure is gross rather than net. The evidence in the record does not preponderate against the Trial Court's finding that Defendant's income is insufficient to meet her expenses, even as bare bone as she presented them. Furthermore, Plaintiff does not contest the Trial Court's determination that Defendant cannot be rehabilitated. Accordingly, the proof in the record establishes that Defendant is economically disadvantaged and has a need for financial support. *Crabtree v. Crabtree*, 16 S.W.3d at 359; *Burlew v. Burlew*, 40 S.W.3d at 470-71.

Plaintiff also questions his ability to pay alimony, given his income. The proof in the record establishes that Plaintiff's monthly net income is $1,840. After expenses, not including anticipated automobile payment, Plaintiff has $720 remaining. Clearly, the proof contained in the record on appeal establishes that Plaintiff has the ability to pay some amount of alimony to his economically disadvantaged former spouse.

Similarly, after considering other factors listed in Tenn. Code Ann. § 36-5-101 (d)(1), the proof in the record supports the Trial Court's award of alimony to Defendant. When the parties' education level and employment experience are considered, Plaintiff obviously has a higher earning capacity than Defendant. Plaintiff has a high school diploma while Defendant has a GED. Tenn. Code Ann. § 36-5-101 (d)(1) (A)-(B). Under the Trial Court's division of assets, Plaintiff, age 60, will enjoy a larger retirement account than Defendant, age 56. Tenn. Code Ann. § 36-5-101 (d)(1) (A) & (H). Accordingly, we find no error in the Trial Court's award of alimony *in futuro* to

---

[2] This Court is puzzled about how Plaintiff calculated Defendant's monthly expenses at only $400 by any stretch of mathematical imagination and cites to Plaintiff Tenn. R. App. P. 27 (a)(7) and Tenn. Ct. App. R. 6(a).

Defendant. We, therefore, affirm the Trial Court's determination that an award of alimony *in futuro* to Defendant is warranted.

Plaintiff's remaining issue on appeal concerns the amount of alimony awarded. Plaintiff points out that when the Trial Court's division of assets is considered, Defendant received the bulk of the marital estate, including the parties' residence and the newer automobile. Plaintiff essentially argues that, after paying the amount of alimony awarded to Defendant, he has no disposable income remaining to start his household "all over."

In setting alimony, the Trial Court may consider the "standard of living . . . the parties established during the marriage." Tenn. Code Ann. § 36-5-101(d)(1)(I). The testimony from the parties established that it took their entire combined incomes to meet their basic needs while they were married. The proof in the record establishes, unfortunately, that there may not be enough income to support these now two separate households at the standard of living these parties enjoyed during their marriage. Since the parties' divorce, Defendant, without alimony, will not be able to cover her bare bone monthly expenses. That this situation exists is clear from the record before us, particularly in light of Plaintiff's monthly expenses which should be similar to Defendant's expenses in many respects in order to maintain a similar standard of living. By the same token, it does not appear from the proof in the record that Plaintiff can meet his expenses if he has to pay $800 per month in alimony.

Taking into account the facts of this case as contained in the record and after "careful[ly] balanc[ing] . . . the factors in Tenn. Code Ann. § 36-5-101(d)(1)," we hold that the Trial Court's award of alimony *in futuro* should be reduced from $800 to $600 per month. *Anderton v. Anderton*, 988 S.W.2d at 683. In making this reduction, we give specific weight to, among other relevant factors, the duration of the parties' marriage and their ages; their relative educational levels, income, expenses, and earning capacities; the Trial Court's award of the parties' home to Defendant; and the Trial Court's award of the bulk of Plaintiff's retirement account to Plaintiff.

We acknowledge this is not a perfect solution to the parties' post-divorce economic difficulties. Neither this Court nor the Trial Court has the power to create, by judicial decree or otherwise, income for the parties where none before existed. The harsh reality is that in this divorce, as in many divorces, there likely is insufficient income available to the parties to allow them to maintain two separate households at the same standard of living they established during their marriage.

## Conclusion

The judgment of the Trial Court is modified by reducing the alimony *in futuro* from $800 to $600 per month. All other aspects of the judgment are affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed 50% to Gerald B. Williams and his surety, and 50% to Cora Rita Williams.

_____
D. MICHAEL SWINEY, JUDGE