# IN THE SUPREME COURT OF TENNESSEE
## AT MEMPHIS
### November 14, 2000 Session

## SUZANNE KAY BURLEW v. BRAD STEVEN BURLEW

### Appeal by permission from the Court of Appeals, Western Section
### Chancery Court for Shelby County
### No. D-26813-II    Floyd Peete, Jr., Chancellor

---

### No. M1998-01177-SC-R11-CV - Filed February 20, 2001

---

The issue in this divorce case concerns the type and amount of alimony that should be awarded to the Wife. The trial court awarded her $220,000 of alimony *in solido* to be paid out in decreasing amounts over eight years, and declined to award her rehabilitative alimony. The Court of Appeals affirmed the trial court's *in solido* award but remanded the case to the trial court to award rehabilitative alimony of at least $1,000 per month for a reasonable period of time. Before this Court, the Husband/appellee argues that rehabilitative alimony is unnecessary and that the alimony *in solido* award is excessive. The Wife/appellant counters that the *in solido* award was not excessive; indeed, she argues that she should have been awarded alimony *in futuro*. We hold that the trial court properly awarded alimony *in solido* rather than alimony *in futuro*. We also hold that the trial court did not err in denying the Wife's request for rehabilitative alimony. Thus, we affirm in part and reverse in part the decision of the Court of Appeals.

### Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the
### Court of Appeals Affirmed in Part; Reversed in Part.

FRANK F. DROWOTA, III, J., delivered the opinion of the court, in which , E. RILEY ANDERSON, C.J., ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ. joined.

Stevan L. Black and Vickie Hardy Jones, Memphis, Tennessee, for the appellant, Suzanne Kay Burlew.

William W. Dunlap, Jr., Memphis, Tennessee, for the appellee, Brad Steven Burlew.

**OPINION**

Suzanne Kay Burlew, the appellant (Wife), and Brad Steven Burlew, the appellee (Husband), were married in 1972 in Flint, Michigan. In 1998, at the time of trial, she was forty-five years old and he was forty-seven. At the beginning of their marriage, the Husband worked for General Motors as an engineer and the Wife studied to obtain a Bachelor of Science degree in nursing. Two years later she began work as a registered nurse and he enrolled in a program to complete prerequisites for medical school while he worked part-time. The next year they moved to Chicago where he enrolled in medical school at Northwestern University and she began new employment.

In 1979, the parties moved to Detroit where the Husband completed an internship, residency, and fellowship in cardiology. The Wife continued to work full-time as a nurse. The next year they started to experience marital problems. The Husband admitted that he had an extramarital affair but promised he would not have other affairs. The parties recommitted to their marriage.

The Wife worked until 1986, and her income was used to pay for living expenses as well as the Husband's medical school expenses. During this time she also obtained a Master's degree in nursing, attending classes on a part-time basis and utilizing a tuition reimbursement plan provided by her employer. In 1986, they moved to Memphis where the Husband accepted a teaching position with the University of Tennessee and joined a private medical practice with the UT Medical Group. The Wife began attending law school at the University of Memphis. She obtained her degree and passed the bar exam in 1989.

During this time the parties unsuccessfully attempted to conceive a child; the Wife had several miscarriages. In 1989, she finally became pregnant. After what was considered a high-risk pregnancy she gave birth to Geoff, the parties' only child. They agreed that she would remain at home to raise Geoff.

The Husband had a second affair in 1993. They again decided to remain married, but in 1995 the Wife learned that he was spending time with another woman. He denies having a sexual relationship with her. In 1996, the Wife filed for divorce, alleging irreconcilable differences and inappropriate marital conduct. The Husband counterclaimed on the same grounds.

The trial court awarded a divorce to the Wife on the ground of inappropriate marital conduct and made various rulings with respect to child custody, visitation rights, attorney fees, and other matters. The court also awarded the Wife alimony *in solido*. Before discussing this award, and the Court of Appeals' decision, it will be useful to outline the parties' financial and employment status as shown in the trial court record. At the time of trial in 1998, the Husband was a tenured associate professor of medicine at the University of Tennessee, for which he earned $93,000 per year. He also earned $101,300 from his work for the UT Medical Group, and $9,000 as a consultant. His gross income was therefore $203,300 per year. The Wife, at the time of trial, was studying to obtain an M.B.A. degree. She testified that she decided to pursue this degree when she realized that her skills

were dated after having stayed home to raise Geoff. While raising Geoff she briefly held two part-time nursing positions, but this was only to obtain her license. She had no source of income other than what she received from her Husband. The parties agreed prior to trial that the division of marital property would be as follows: $377,400 to the Wife (60.7%) and $223,700 to the Husband (39.3%).

Both parties presented expert testimony on the Wife's financial situation. Robert Winfield, a certified financial planner, testified for the Wife that the Husband could pay $3,500 per month in alimony and $2,100 per month in child support. Winfield assumed that the Wife's earning capacity was $30,000 per year and that she would work part-time until Geoff reached the age of twelve. He testified that this amount in alimony and child support, plus $1,000 per month in rehabilitative alimony, would be necessary to prevent the Wife from depleting her share of the marital property. The Husband presented the testimony of William H. Watkins, a certified public accountant. Watkins testified that if the Wife earned $30,000 per year, her net annual income with child support would not require her to encroach upon her share of the marital property. The Husband also testified that the Wife could earn $35,000 to $65,000 per year.

A final area of testimony relevant to this appeal is the Wife's admission that she used over $61,000 in joint marital funds before the trial began. She spent most of this money on her attorneys, the completion of her M.B.A, and Geoff's private school tuition. The Husband also paid her $5,000 per month in temporary child support and alimony while the trial was pending, totaling $105,000.

The trial court ordered the Husband to pay $2,100 per month in child support, as well as Geoff's education expenses of $7,032 per year. The court also awarded the Wife alimony *in solido* in the amount of $220,000. The Husband was ordered to pay this amount in installments: $45,000 the first year, reduced by $5,000 each subsequent year, ending after eight years. The court required the Husband to pay for the completion of the Wife's M.B.A. degree.

Both parties appealed numerous issues to the Court of Appeals, including the trial court's award of alimony *in solido*. The Wife contended that the court erred in failing to award her alimony *in futuro* rather than alimony *in solido*. The Husband contended that the alimony award was excessive.

The Court of Appeals affirmed the trial court's decision on all issues except that it also awarded the Wife rehabilitative alimony. The trial court's order makes no mention of rehabilitative alimony, but the court implicitly considered and rejected the Wife's request for such alimony because her expert, Winfield, specifically testified that she needed rehabilitative alimony so as not to deplete her share of the marital property.

In ordering rehabilitative alimony the Court of Appeals noted that the Wife worked while the Husband attended medical school and completed his internship, residency, and fellowship and that she moved several times in furtherance of his career, causing her to forfeit certain retirement benefits. The court also noted that the parties agreed she would stay home to raise Geoff. Thus,

-3-

although she obtained several degrees with his financial support, by their agreement she did not seek outside employment; her old skills are dated, and she has been unable to utilize her new skills. The court noted that although the Wife's earning capacity is unclear based on the trial record, it is substantially less than the Husband's capacity. The court also noted that the Husband's inappropriate marital conduct contributed to the termination of the marriage. Based on these factors, the long duration of the marriage, and the standard of living enjoyed by the parties during the marriage, the court remanded the case to the trial court for a "determination of when Wife could reasonably be expected to attain an income level commensurate with her education and for an award of rehabilitative alimony in an amount not less than $1,000 per month."

We granted the parties' applications to appeal to consider whether the Court of Appeals erred in its rulings concerning alimony, namely, that the trial court properly awarded the Wife $220,000 alimony *in solido* to be paid out in decreasing amounts over eight years, and that the trial court should have awarded rehabilitative alimony.[1]

## ANALYSIS
### Standard of Review

Appellate review of findings of fact by the trial court are de novo upon the record of the trial court accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. See Tenn. R. App. P. 13(d). If the trial court has not made findings of fact with respect to the relevant factors an appellate court must conduct its "own independent review of the record to determine where the preponderance of the evidence lies." Crabtree v. Crabtree, 16 S.W.3d 356, 360 (Tenn. 2000) (citing Brooks v. Brooks, 992 S.W.2d 403, 405 (Tenn. 1999)). Review of questions of law is de novo, without a presumption of correctness. See Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999). The amount of alimony awarded is largely a matter left to the discretion of the trial court, and the appellate courts will not interfere except in the case of an abuse of discretion. See Crabtree, 16 S.W.3d at 360 (citing Hanover v. Hanover, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989)).

### Alimony *In Solido*, Alimony *In Futuro*, and Rehabilitative Alimony

The Wife argues that she should have been awarded alimony *in futuro* rather than alimony *in solido*. The Husband argues that the *in solido* award is excessive. The parties also disagree with the Court of Appeals' ruling on rehabilitative alimony. A brief review of the differences between these three types of alimony is in order.

For purposes of this appeal, the relevant portion of the statute governing alimony is Tennessee Code Annotated section 36-5-101(d), which provides in pertinent part:

---

[1] The Wife has also applied for permission to appeal the Court of Appeals' rulings on custody, visitation rights, and attorney fees. That court affirmed the trial court on these issues. We in turn affirm the Court of Appeals.

It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3).

Tenn. Code. Ann. § 36-5-101(d)(1). Accordingly, as we recently stated, "the legislature has demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse." Crabtree, 16 S.W.3d at 358.

When deciding whether rehabilitation is possible, and, in general, determining the proper form and amount of alimony, courts must consider the "relevant factors" set forth in section 101(d)(1)(A) through (L), but "the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support." Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995) (quoting Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)); see also Anderton v. Anderton, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1999). A court must keep in mind that "the purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasible, to mitigate the harsh economic realities of divorce." Anderton, 988 S.W.2d at 381 (citing Shackleford v. Shackleford, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980)). The amount of alimony should be determined so "that the party obtaining the divorce [is not] left in a worse financial situation than he or she had before the opposite party's misconduct brought about the divorce." Aaron, 909 S.W.2d at 411 (citing Shackleford, 611 S.W.2d at 601).

In Crabtree v. Crabtree we recently held that "[i]f an award of rehabilitative alimony is justified by the parties' circumstances, a trial court initially should award rehabilitative alimony only." Crabtree, 16 S.W.3d at 360. The legislative purpose of rehabilitation is to encourage divorced spouses to become self-sufficient. Id. "If rehabilitation is not feasible, the trial court may then make an award of alimony *in futuro*. Accordingly, a concurrent award of both types of alimony is inconsistent." Id. This holding emphasizes both the legislative preference for rehabilitation as well as the established rule that this preference does not "entirely displace other forms of spousal support when the facts warrant long term or more open-ended support." Anderton, 988 S.W.2d at 682; see Aaron, 909 S.W.2d at 410; Isbell v. Isbell, 816 S.W.2d 735, 739 (Tenn. 1991)).

There are two forms of "long term or more open-ended support": alimony *in futuro* and alimony *in solido*. "Whether alimony is *in futuro* or *in solido* is determined by either the definiteness [*in solido*] or indefiniteness [*in futuro*] of the sum of alimony ordered to be paid at the time of the award." Waddey v. Waddey, 6 S.W.3d 230, 232 (Tenn. 1999) (citing McKee v. McKee, 655 S.W.2d 164, 165 (Tenn. Ct. App. 1983)). Alimony *in solido* is an award of a definite sum of alimony and

"may be paid in installments provided the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded." Id. A typical purpose of such an award would be to adjust the distribution of the parties' marital property. See, e.g., Lindsey v. Lindsey, 976 S.W.2d 175, 180-91 (Tenn. Ct. App. 1997); Houghland v. Houghland, 844 S.W.2d 619, 622-23 (Tenn. Ct. App. 1992).

"Alimony *in futuro*, however, lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid." Waddey, 6 S.W.3d at 232. Unlike alimony *in solido*, an award of alimony *in futuro* is subject to modification, and its duration may be affected by contingencies agreed upon by the parties or imposed by courts. Id. at 232-33; see also Day v. Day, 931 S.W.2d 936, 939 (Tenn. Ct. App. 1996) ("Final awards of alimony *in solido* are not modifiable."). As we have noted, the purpose of this form of alimony is to provide financial support to a spouse who cannot be rehabilitated.

### The Trial Court's Award

The trial court awarded the Wife alimony *in solido* but declined to award rehabilitative alimony. The Court of Appeals affirmed the *in solido* award but concluded that rehabilitative alimony was also appropriate. We recently held in Crabtree that alimony *in futuro* and rehabilitative alimony are mutually exclusive, reasoning that to allow "concurrent awards of alimony *in futuro* and rehabilitative alimony would require a trial court to engage in an act of clairvoyance. The trial court would not only be required to anticipate the duration necessary for rehabilitation but would also be required to anticipate the future needs of a spouse who, it has been determined, can be rehabilitated." See Crabtree, 16 S.W.3d at 360.
Thus, we stated that "if an award of rehabilitative alimony is justified by the parties' circumstances, *a trial court initially should award rehabilitative alimony only*." Id. (emphasis added). This holding, along with the Court of Appeals' decision in this case, raises the question of whether rehabilitative alimony can be combined with an award of alimony *in solido*. The comparison between alimony *in solido* and alimony *in futuro* discussed above makes it clear that only the latter is inconsistent with a concurrent award of rehabilitative alimony. The very definition and purpose of rehabilitation means that if a spouse can be rehabilitated he or she has no need of alimony in futuro. This is the meaning of our decision in Crabtree. As noted above, however, an award of alimony *in solido* is for a definite sum of money, to be paid all at once or in installments over a definite period of time, and is often awarded to adjust the division of marital property. Such an award cannot be modified. This is quite different from alimony *in futuro*, which is indefinite and modifiable. Both in terms of logic and the purposes of alimony, we think it clear that alimony *in solido* is not inconsistent with a concurrent award of rehabilitative alimony.

Purely as a matter of law, therefore, we conclude that the Court of Appeals did not err simply because it ordered a concurrent award of alimony *in solido* and rehabilitative alimony. However, we find that the record does not reveal good cause for disturbing the trial court's award. Provided that the trial court considers the purposes of alimony, discussed above, and the specific factors listed in the statute, Tenn. Code Ann. § 36-5-101(d), it has wide discretion in determining the appropriate award. See Crabtree, 16 S.W.3d at 360. Although a trial court may award alimony *in solido* along

with rehabilitative alimony if the circumstances of the parties permit, the trial court in this case did not err by awarding only alimony *in solido*.

_____The Court of Appeals emphasized the following facts in holding that rehabilitative alimony was appropriate: the Wife's earning capacity is substantially less than the Husband's; the Husband contributed to the termination of the marriage based on his inappropriate marital conduct; the long duration of the marriage; and the standard of living enjoyed by the parties during the marriage. These facts are worthy of emphasis. But they are also clearly reflected in the record, and we have no reason to think that the trial court failed to consider them. Nor does the trial court's award appear too low in light of the two most important factors: the Wife's need and the Husband's ability to pay. The parties' agreed that the Wife would take $377,400, or 60.7% of the marital property. On top of this sum, the trial court ordered the Husband to pay $220,000 in non-modifiable alimony *in solido* over an eight-year period, $2,100 per month in child support, and $7,100 per month for Geoff's educational expenses. The Wife can also be expected to earn $30,000 per year once she starts to work full-time again; given her substantial education, she may earn more than this amount.

The Wife argues that she should have been awarded alimony *in futuro* rather than alimony *in solido*. The trial court did not fully explain the basis of its award, but it is clear that the court did not think the Wife was incapable of being rehabilitated. Her prior experience as a full-time registered nurse and her education, including several graduate degrees, indicate that she is capable of being rehabilitated. Indeed, the Husband argues that the Court of Appeals erred because she is already rehabilitated. Whether the Wife is fully rehabilitated or almost rehabilitated is a close question but it is clear that she is not *incapable* of being rehabilitated; thus, she is not a candidate for alimony *in futuro*. As to the Husband's contention, we need not decide whether the Wife is fully rehabilitated. By inference from its award, the trial court agreed with the Husband. Although it is a close question, after examining the record we do not find that the evidence preponderates against the trial court's ruling. We therefore reverse the Court of Appeals' decision to award rehabilitative alimony.

Finally, the Husband argues that the alimony *in solido* award of $220,000 is excessive. Neither the trial court nor the Court of Appeals agreed. We see no reason to reduce the amount of the award.

For these reasons we think that the trial court's alimony award should be upheld in its entirety.[2]

CONCLUSION

_____

[2] The Wife has offered additional evidence of her financial and medical circumstances in her Motion for Consideration of Post-Judgment Facts Relating to Alimony. We have considered this motion but we do not think it requires a different disposition of this case.

For the reasons discussed above, we affirm the Court of Appeals' decision on all issues except for the award of rehabilitative alimony. On that issue, we find that the evidence does not preponderate against the trial court's ruling.

_____
FRANK F. DROWOTA, III, JUSTICE