IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 1, 2004 Session

## GARY DEWAYNE FINN v. MARY LOUISE SUMMER BUNDY

**Appeal from the Chancery Court for Sumner County**
**No. 96D-216      Tom E. Gray, Chancellor**

**No. M2003-01368-COA-R3-CV - Filed February 22, 2005**

This appeal involves enforcement of a divorce decree incorporating a marital dissolution agreement and the obligation of a parent to support a child beyond the child's majority in certain circumstances. The trial court determined that the former husband's alimony obligation had terminated upon the payment of the entire amount of alimony *in solido* created in the order and MDA. The court also held that the father had a continuing obligation to support his adult son because the son was disabled. We affirm both holdings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN, and FRANK G. CLEMENT, JR., JJ., joined.

M. Allen Ehmling, Gallatin, Tennessee, for the appellant, Mary Louise Summer Bundy.

Clark Lee Shaw, for the appellee, Gary Dewayne Finn.

## OPINION

These parties were divorced by order entered September 11, 1996, and the final decree approved and incorporated a marital dissolution agreement. The wife was given custody of the parties' two minor children, and the husband was ordered to pay child support. The instant proceedings began with the September 24, 2002, filing by Mr. Finn of a petition to terminate child support and alimony and was concluded with the trial court's final order entered May 5, 2003. Ms. Bundy, the former wife, appeals the trial court's termination of alimony. Mr. Finn, the former husband, appeals the court's holding that he must continue to pay support for the parties' adult disabled child. We begin with the issue of child support.

# I. CHILD SUPPORT

In his petition, Mr. Finn alleged that both of the parties' children had reached the age of eighteen and graduated from high school and, as a result, he should be relieved of his obligation to pay child support. There is no dispute that the parties' older child, Mary Ann, born March 19, 1982, had reached the age of majority, graduated from high school, and was married at the time of the hearing. The trial court held that Mr. Finn's obligation to pay support for this child had terminated. No appeal is taken from this holding.

The parties' younger child, Gary Dewayne Finn II, was born August 23, 1983; thus, he turned eighteen in August of 2001. Mr. Finn alleged this child had graduated from high school in May of 2002 and asked to be relieved of child support retroactive to that date.

Ms. Bundy responded that the parties' son Dewayne was disabled, unable to care for himself, continued to live with and was dependent upon his mother, and, consequently, the need for child support was continuing. She alleged that Dewayne was entitled to continuing support from his father pursuant to Tenn. Code Ann. § 36-5-101(p) and asked the court to set an appropriate amount of support for Dewayne.

After the hearing, the trial court found that the parties' son was a mentally challenged adult whom both parties had an obligation to support beyond age eighteen. The court set the father's monthly support obligation at $331.80 per month.[1] On appeal Mr. Finn concedes that his son has a physical or mental impairment that substantially limits one or more major life activity. However, he argues that Dewayne is not so severely disabled as to require the father to pay support for an indefinite future.

Mr. Finn's argument is based on the difference between the two provisions of Tenn. Code Ann. § 36-5-101(p):

> (p)(1) Except as provided in subdivision (p)(2), the court may continue child support beyond a child's minority for the benefit of a child who is handicapped or disabled, as defined by the Americans with Disabilities Act, until such child reaches twenty-one (21) years of age.

> (2) Provided, that such age limitation shall not apply if such child is severely disabled and living under the care and supervision of a parent and the court determines that it is in the child's best interest to remain under such care and supervision and the obligor is financially able to continue to pay child support. In such cases, the court may

---

[1]The amount is not at issue.

require the obligor to continue to pay child support for such period as it deems in the best interest of the child.[2]

Essentially, Mr. Finn argues that, although his son may meet the requirements of subpart (1),[3] support under that provision is limited in duration,[4] and that Dewayne is not severely disabled so as to qualify for continuing support under subsection (2). The trial court did not use the language of either subpart (1) or (2), but clearly held that the son was handicapped and that the father had a continuing obligation to support his handicapped child. Implicit in this holding is a finding that the parties' son was severely disabled. Because the trial court did not make specific findings of fact about the son's situation, we review the facts in the record under a purely *de novo* review. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Issues of law are reviewed *de novo*. *Id.* The record does not include a transcript of the hearing, but does include a statement of the evidence.[5]

Ms. Bundy testified that Dewayne lives with her and she provides his daily care. The parties' adult daughter also testified that she helps her mother with Dewayne's care. Both had extensive personal knowledge of Dewayne's condition and capabilities. Mr. Finn testified that he had not visited or seen Dewayne for several years. Therefore, he had no personal knowledge of Dewayne's daily activities or needs.

Several evaluation reports on Dewayne were introduced and are included in the record before us. From these reports, we learn that he has had serious medical problems since his premature birth, including spina bifida with encephalopathy, cerebral palsy, hydrocephalus, myelodysplasia, and neurogenic bladder. He underwent fourteen surgical procedures before he was one year old, and removal of cerebral tissue during one surgery impaired his muscular coordination. He is also mentally retarded and has impaired speech and fine-motor problems.

A psychoeducational evaluation performed February 21, 2003, by Trousdale County Schools stated that Dewayne had received special education services all his life, graduated from Trousdale County High School in 2002, and was currently obtaining adult services through H.A.T.S., an agency that provides vocational, learning, and social opportunities to adults with disabilities. Dewayne's

---

[2] Subsection (3) provides that the court may use the child support guidelines in setting the amount of continuing support.

[3] The Americans with Disabilities Act defines disability, in part, as a physical or mental impairment that substantially limits one or more of the major life activities of an individual. 42 U.S.C. § 12102(2).

[4] Mr. Finn argues that any obligation under that section would have expired because Dewayne was born March 19, 1982. That date is the date given for the daughter's birth in Mr. Finn's modification petition. Dewayne's birth date is stated in the petition as August 23, 1983. The trial court's order on the statement of the evidence states that the daughter, Mary Ann Tomlinson, was born March 19, 1982. All the evaluation reports list Dewayne's birth date as August 23, 1983. Thus, he would have turned 21 in August of 2004, after the petition and proceedings herein.

[5] Both parties submitted statements of the evidence. The trial court approved Ms. Bundy's statement with specified corrections.

intellectual functioning score placed him in the mentally retarded range. His adaptive skills were within the mild range of mental retardation and showed relative weaknesses in functional academics, home living, health and safety, and self-care. The report concluded that his overall intellectual functioning placed his mental age at from 5 years, 7 months to 8 years, 2 months. It also stated individuals in this range generally cannot live independently.

Both his mother and his sister testified that Dewayne requires a great deal of supervision. He does not remember to eat and cannot prepare his food. He cannot operate any basic equipment in the house including the microwave, dishwasher, stove, washer and dryer. He has little control over his bodily functions, and he soils his underwear daily. He cannot handle money or make change and has no concept of the value of money. He works in a sheltered workshop through H.A.T.S. and earns $25 to $45 per month. He uses the money to buy extra things for himself, but his mother or sister must assist with any purchases. He is incapable of being left alone for more than a couple of hours because he begins to panic. He cannot take care of his physical needs, his affairs, or his personal hygiene.

Ms. Bundy testified Dewayne was able to graduate from high school through a special education program that allows a diploma equivalent. Dewayne's sister, Mary Ann Tomlinson, testified that even at the workshop Dewayne attends, he cannot work without supervision and must be reminded what task to perform and how to perform it. Ms. Bundy receives supplemental social security of $249 or $289 per month payments for Dewayne's benefit, and he receives Tenn Care benefits.[6]

The testimony that Dewayne needs supervision and cannot function independently was consistent with a report from a physician, dated October 22, 2002, stating that Dewayne Finn is unable to live without adult supervision and assistance and stated:

Mr. [Dewayne] Finn needs continuous assistance and supervision due to the following conditions:

1.      Mr. [Dewayne] Finn is unable to comprehend or cope with danger in his environment;

2.      He is unable to prepare a meal competently or safely;

3.      He is unable to finish a meal without assistance due to becoming distracted;

4.      Mr. [Dewayne] Finn is unable to operate sophisticated machinery, (*e.g.* washing machine, car, motorcycle, or bicycle) due to lack of comprehension and/or coordination. He is therefore unable to wash clothing and travel to a market for food.

---

[6] Prior to entry of the final order, the trial court asked the attorneys to determine whether any continued award of support would adversely affect the SSI or medical benefits.

The undisputed evidence shows the parties' son is living under the care and supervision of his mother, that such care and supervision is necessary, and that remaining in such care and supervision is in Dewayne's best interest. The evidence also establishes that Dewayne is severely disabled. Although Mr. Finn testified that he thought his son was capable of working to support himself, that opinion is totally unsupported by any evidence in the record. Dewayne's work at the sheltered workshop, while important and beneficial, is not comparable to a job that could provide his necessary financial support.

The final requirement for the application of Tenn. Code Ann. § 36-5-101(p)(2) is that the obligor parent, here Mr. Finn, is financially able to pay support. Mr. Finn asserts he is himself disabled and his only income is from social security and an annuity from a personal injury settlement discussed more fully below. More specific evidence regarding Mr. Finn's financial condition is not included in the record. The evidence does not preponderate against the trial court's implicit finding that Mr. Finn is financially able to pay the $331 per month ordered by the trial court.

Accordingly, we affirm the trial court's order that Mr. Finn continue to provide support for the benefit of his adult disabled child pursuant to Tenn. Code Ann. § 36-5-101(p)(2).

## II. ALIMONY

Mr. Finn also petitioned to be relieved of his alimony obligation. During the marriage, the parties had settled a lawsuit for personal injuries to Mr. Finn during the course of his employment. The settlement provided for an annuity contract with Safeco Insurance under which the parties received $1580 per month, with payments guaranteed for five years. The MDA addressed these settlement payments, providing:

> The parties receive $1580.00 per month from a settlement of a personal injury lawsuit wherein the above mentioned amount is paid for as long as the parties live with the survivor to receive 100% of the payments upon the death of the other for the life of the survivor guaranteed for five (5) years. The last guaranteed payment is on December 19, 2000. As alimony to the Plaintiff, the Defendant shall pay to the WIFE the sum of $500 per month for as long as $1,580 is received by the Defendant. Nothing in this Order or Agreement shall be deemed to extinguish the Plaintiff's right to receive the $1,580 per month payment guaranteed for five (5) years in the event the Defendant predeceases the Plaintiff. The Defendant shall make the payment to the Plaintiff within five (5) days of the Defendant receiving the $1,580 payment.

This provision became the source of continuing disputes over its meaning and effect and the basis for the trial court's alimony decision that is the subject of this appeal.

The parties herein disagree over whether the alimony awarded to Ms. Bundy in the divorce decree incorporating the parties' MDA was subject to modification. Whether an alimony award is subject to modification depends upon the type of alimony involved, as determined from the language

of the order or agreement establishing the award. The parties disagree as to whether the alimony provided for in the MDA provision quoted earlier was alimony *in solido* or alimony *in futuro*.[7]

Alimony *in solido* is an award of a definite sum of money, and the total amount to be paid is ascertainable at the time of the award. *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001); *Waddey v. Waddey*, 6 S.W.3d 230, 232 (Tenn. 1999). It retains its character as alimony *in solido* even if paid in installments, provided the payments are ordered over a definite period of time and the total amount to be paid is definite and ascertainable. *Burlew*, 40 S.W.3d at 471; *Waddey*, 6 S.W.3d at 232. Alimony *in solido* is often used to adjust the distribution of the parties' marital property. *Burlew*, 40 S.W.3d at 471. It promotes the twin goals of certainty and finality though finality though the award of a fixed amount without conditions. *Bryan v. Leach*, 85 S.W.3d 136, 145 (Tenn. Ct. App. 2001). The determinative factor in deciding whether an award of alimony is *in solido* is the intent of the parties (in an MDA) or the court (in final order). *Bryan*, 85 S.W.3d at 146; *Self v. Self*, 861 S.W.2d 360, 363 (Tenn. 1993).

A final award of alimony *in solido* is not subject to future modification. *Burlew*, 40 S.W.3d at 471; *Day v. Day*, 931 S.W.2d 936, 939 (Tenn. Ct. App. 1996). The other type of alimony at issue, alimony *in futuro*, however, remains subject to modification. *Burlew*, 40 S.W.3d at 471; *Bryan*, 85 S.W.3d at 146.

Alimony *in futuro* continues support that was incident to the marriage and continues indefinitely. *Bryan*, 85 S.W.3d at 146. The purpose of an award of alimony *in futuro* is to provide support to a spouse who cannot be rehabilitated. *Burlew*, 40 S.W.3d at 471. Alimony *in futuro* "lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid." *Burlew*, 40 S.W.3d at 471, quoting *Waddey*, 6 S.W.3d at 232. Its duration, and therefore the total amount to be paid, is subject to contingencies agreed to by the parties (in an MDA) or imposed by the court (in the final order). *Burlew*, 40 S.W.3d at 471.

In the case before us, the trial court held that the MDA provided for $30,000 as alimony *in solido* by payment of $500 per month for 60 months. Although both parties attempted to testify in the trial in these proceedings as to their understanding of the MDA provision, the trial court limited such testimony, determining that interpretation of the provision was a question of law. Additionally, the trial court entered an order correcting the Statements of the Evidence submitted by both parties which clarifies the proof at trial regarding the settlement proceeds. The court stated that there was no testimony "as to both parties," as opposed to Mr. Finn only, "being the recipients of the settlement." The court also recounted prior litigation over the MDA provision.

As the trial court noted, the settlement document itself was not introduced into evidence in this proceeding. The trial court also noted that in 1998 Mr. Finn had petitioned to modify the alimony award, and the settlement document was introduced in the trial on that petition. The prior proceeding

---

[7]Rehabilitative alimony is not at issue, and neither party claims the award was intended to be rehabilitative alimony.

was brought into the matter here on appeal by Ms. Bundy's answer in which she asserted that the issue of alimony was *res judicata* in that it had been litigated regarding the Safeco Insurance annuity, referring to the order entered August 19, 1999, *nunc pro tunc* to February 4, 1999.

The record indicates there were two prior orders entered. The first, entered December 16, 1998, appeared to respond to Mr. Finn's petition and stated that the issue before the court was whether or not the alimony provision could be modified. The court held:

> . . . the amount of the obligation of Gary Dewayne Finn is a determinable amount. That amount is $30,000.00 ($500.00 for 60 months). It is alimony *in solido*.

Apparently, this order was not appealed. The second order, referenced by Ms. Bundy in her answer and by the trial court in its order approving and correcting the statement of the evidence, resolved two sets of issues. The first was heard August 4, 1998, and involved Mr. Finn's failure to pay child support. The court found Mr. Finn to be in arrears in the amount of $1,869. The order noted the check from Safeco payable to the parties had been held by one of the attorneys, and the court ordered that the checks should be executed and the proceeds used to pay Mr. Finn's alimony and child support obligation including the arrearage.

The second part of the order resulted from a hearing on February 4, 1999, on an unidentified petition filed by Mr. Finn. In pertinent part, the order stated:

> That nothing in this Order shall be deemed to change the contractual rights that both parties have to the funds distributed pursuant to the annuity contract with SAFECO LIFE INSURANCE COMPANY or to alter the contract or the contractual rights of GARY FINN and MARY FINN with SAFECO LIFE INSURANCE COMPANY so that both parties are entitled to receive the funds from SAFECO LIFE INSURANCE COMPANY.

Accordingly, the court ordered that Safeco send $789 per month (alimony and child support) directly to Ms. Bundy and send the remainder of the monthly payment ($791) to Mr. Finn. It is the above-quoted language that Ms. Bundy relied upon in her answer. In its order on the statements of the evidence in the proceeding that is the subject of this appeal, the trial court explained the language it had used in the prior order, stating:

> That statement was entered as part of the Court's order because paragraph 6 of the Marital Dissolution Agreement which is incorporated and a part of the final decree of divorce ordered that the husband pay alimony in the sum of $500 per month for so long as he received the $1,580 per month on the annuity with the last guaranteed payment of $1,580 per month to be the 19th day of December, 2000. Further, the final Decree provided that in event the husband died before December 19, 2000 and the wife survived him then she would be entitled to receive the full $1,580 per month payment. It was certainly the intent of the Court not to have an order entered before

the 19th day of December, 2000 that would cause that agreement of the parties not to be followed.

The court's reference to December 19, 2000, was to the date of the last guaranteed monthly payment under the settlement annuity.[8]

On appeal, Ms. Bundy argues that the $500 per month she was to receive under the MDA was either a distribution of marital property or was alimony *in solido* and, in either case, was not modifiable. The trial court had resolved these issues in a previous order that was not appealed, finding the MDA provision constituted an award of alimony *in solido* in the total amount of $30,000. On the basis of that holding, the trial court did not allow Mr. Finn in the earlier proceedings to cease his alimony payments or reduce them in amount until the total amount was paid.

However, Ms. Bundy argues she is entitled to receive $500 per month as alimony *in solido* for an indefinite time, *i.e.*, as long as the annuity proceeds are received by Mr. Finn. This argument is not tenable in view of the definition of alimony *in solido*, since at the time of the divorce there was no way to ascertain the duration beyond five (5) years.

The language of the MDA provision is less than clear on the issue at hand, but the parties agreed to this language. The trial court's holding that the provision constituted an award of alimony *in solido* for 60 months, the duration of the guaranteed payments, was enforced to prevent Mr. Finn from modifying the $500 per month payment during the five-year period. The trial court's rulings have been consistent in considering the alimony award to be a total of $30,000, to be paid in monthly installments. We do not disagree with the trial court's holding that the payments to Ms. Bundy constituted alimony *in solido*.[9]

---

[8]Although there appears to be implicit assumption that the date of the last guaranteed payment from the annuity is the same as the date of the last alimony *in solido* payment, that is not the case. The five years of settlement payments began before the divorce decree was entered. The court's order herein, however, reaffirmed its earlier holding that the total amount of alimony *in solido* was $30,000, calculated at 60 months of $500 payments. Neither party has addressed this issue.

[9]Because of the MDA provision's language that Mr. Finn was to pay to Ms. Bundy, as alimony, "the sum of $500 per month for as long as $1,580 is received by [him]," it is arguable that the five years of payments was not the entirety of Mr. Finn's obligations and that any amount beyond the five years would be alimony *in futuro*. However, Ms. Bundy has not made that argument, instead insisting that even payments beyond five years were alimony *in solido*. Perhaps she adopted that strategy because alimony *in futuro* or alimony the amount of which is not calculable on the date the decree was entered terminates "automatically and unconditionally" upon the remarriage of the person receiving such alimony. Tenn. Code Ann. § 36-5-101(a)(2)(B). While the parties herein could have agreed the payments would not cease upon Ms. Bundy's remarriage, they did not explicitly state any such agreement. It is not clear from the record when Ms. Bundy remarried, but she was referred to as Ms. Bundy in the August 1999 order, so she remarried before the expiration of the five years of alimony *in solido*.

Accordingly, we affirm the trial court's holding that Mr. Finn's alimony obligation ceased upon the payment of the total amount of $30,000

## III. CONCLUSION

We affirm the trial court's order that Mr. Finn provide continued support for his adult disabled child. We also affirm the trial court's determination that Mr. Finn's alimony obligation terminated upon his payment of the total amount of alimony *in solido*. Costs of this appeal are divided equally between the appellant, Mary Louise Summer Bundy, and the appellee, Gary Dewayne Finn, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, J.