T.C. Summary Opinion 2006-70

UNITED STATES TAX COURT

MICHAEL P. TULAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21664-04S.                    Filed April 26, 2006.

Michael P. Tulay, pro se.

<u>James L. May, Jr.</u>, for respondent.

COHEN, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a deficiency of $11,026 in petitioner's Federal income tax for 2002. Respondent also determined an accuracy-related penalty under section 6662(a) and (b)(1) and (2) of $2,205.20. The issues for decision are whether petitioner's $35,000 payment to his former wife was alimony, deductible under section 71(b), and whether petitioner is liable for the penalty for negligence or substantial understatement of tax.

## Background

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Knoxville, Tennessee, at the time that he filed his petition.

On August 19, 2002, petitioner and his then wife, Pamela Moritz Tulay (Tulay), met with their respective attorneys to negotiate the terms of their divorce after failed attempts at mediation. At the time of the August 19 meeting, petitioner was represented by William A. Mynatt (Mynatt), and Tulay was represented by Wanda G. Sobieski (Sobieski). Tulay had previously been represented by different counsel in the divorce proceedings. A court reporter was present at the August 19 meeting and prepared a transcript. At the end of the meeting, Sobieski read into the record the understanding that the parties had reached as follows: Petitioner would pay $3,900 a month in

child support; Tulay would keep the house in which she was living, and petitioner would keep the condominium in which he was living; each party retained his or her vehicle; personal property would remain in the possession of whoever had it on that date and "Any stock or cash accounts * * * [would] be divided 50/50 as of their balance" on that date (August 19, 2002); Tulay was to be "granted a 50 percent plus $35,000 interest in" petitioner's retirement accounts; and an account for the children would be maintained with Tulay as custodian and petitioner as trustee. Petitioner agreed to be bound by the stated terms. After the meeting, in accordance with the understanding that had been stated, Sobieski prepared the Marital Dissolution Agreement (MDA) to be signed by petitioner and Tulay.

Petitioner had taken handwritten notes at the August 19 meeting, and Tulay initialed petitioner's notes. On the last page of those notes, petitioner had labeled the $35,000 cash payment as "rehab alimony".

The terms of the MDA followed the understanding of the parties as stated at the August 19 meeting. Under the heading "Retirement Accounts/Investment Accounts", petitioner was to transfer 50 percent plus $35,000 of his retirement accounts to Tulay, and he agreed to assist Tulay "in obtaining any Qualified Domestic Relations Order or other documents necessary to secure the transfer of those funds" to Tulay without penalty. There was

neither a heading nor a specific designation of money to be paid to Tulay as alimony. Petitioner signed the MDA on August 23, 2002, and it was filed by Sobieski with the Chancery Court for Knox County, Tennessee (the Tennessee Court), on August 28, 2002.

On September 3, 2002, the Tennessee Court entered a Final Decree of Divorce and found that petitioner and Tulay had made "adequate and sufficient provisions in their * * * [MDA] for an equitable settlement of any and all property rights, custody and support". The MDA was incorporated as an "Order of the Court", and petitioner and Tulay were ordered to comply with its terms.

On September 16, 2002, UBS Paine Webber (Paine Webber) issued a check to Tulay in the amount of $79,340.74, representing a 50-percent interest in one of petitioner's retirement accounts and the $35,000 payment required under the terms of the MDA.

On April 15, 2003, petitioner electronically filed a Form 1040, U.S. Individual Income Tax Return, for 2002, on which he claimed a deduction of $35,000 for alimony. Petitioner had assistance from Harold Adair (Adair) of H&R Block in filling out his tax return. Adair had been assisting petitioner in filling out his tax returns for the prior 6 or 7 years. Petitioner told Adair that the $35,000 payment was alimony to pay for the education of Tulay; however, he did not provide Adair with the MDA. After reviewing with petitioner Internal Revenue Service Publication 504 and the requirements for a payment to be

considered alimony, Adair determined that petitioner met the requirements and deducted the payment on petitioner's tax return.

In the notice of deficiency, the Internal Revenue Service disallowed petitioner's deduction because he "did not establish that the amount shown was (a) alimony and (b) paid, it is not deductible."

### Discussion

#### Characterization of the $35,000 Payment

The parties dispute whether the $35,000 payment at issue was a property settlement or alimony.  In the event the payment was some form of alimony, the parties dispute whether it met the requirement of section 71(b)(1)(D).

Property settlement payments are not deductible for tax purposes from the income of the paying spouse.  Yoakum v. Commissioner, 82 T.C. 128, 134 (1984), and cases there cited; see Rogers v. Commissioner, T.C. Memo. 2005-50 (applying Tennessee law).  Under section 215, a deduction is allowed for an amount equal to alimony or separate maintenance payments paid during the taxable year.  "Alimony or separate maintenance payment" means any alimony or separate maintenance payment that is includable in the gross income of the recipient under section 71.  Sec. 215(b).

Section 71(b)(1) defines "alimony or separate maintenance payment" as any payment in cash if--

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

If the payor is liable for any qualifying payment after the recipient's death, none of the related payments required will be taxed as alimony. Sec. 1.71-1T(b), Q&A-13, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984). Whether a postdeath obligation exists may be determined by the terms of the divorce or separation instrument or, if the instrument is silent on the matter, by State law. Morgan v. Commissioner, 309 U.S. 78, 80-81 (1940); see Rogers v. Commissioner, supra. The parties agree that the divorce decree does not provide any conditions for the termination of the payment.

Tennessee law provides for three kinds of alimony: Alimony in futuro, alimony in solido, and rehabilitative alimony. See Burlew v. Burlew, 40 S.W.3d 465, 470-471 (Tenn. 2001); see also Self v. Self, 861 S.W.2d 360, 363 (Tenn. 1993). Alimony in futuro is awarded to provide financial support to a spouse who cannot be rehabilitated. Burlew v. Burlew, supra at 471. It is

subject to modification and its duration is uncertain due to contingencies agreed upon by the parties or imposed by the courts. Id. Alimony in futuro terminates upon the death or remarriage of the recipient. Tenn. Code Ann. sec. 36-5-101(a)(2)(B) (2003). Alimony in solido is an award of a definite sum of money to be paid in a lump sum or as installments over a definite period of time. It is not subject to modification and does not terminate upon the death of either party. Burlew v. Burlew, supra at 471. Rehabilitative alimony is awarded when it is feasible for the economically disadvantaged spouse to achieve, with reasonable effort, an earning capacity that will allow for the spouse to be self-sufficient and have a standard of living comparable to the one he or she enjoyed during the marriage. Id.; Tenn. Code Ann. sec. 36-5-101(d)(1)(C). Rehabilitative alimony is modifiable and terminates upon the death of either spouse. Tenn. Code Ann. sec. 36-5-101(d)(1)(C); Self v. Self, supra at 363.

Respondent argues that the disputed $35,000 payment was, on the face of the agreement, part of the property settlement rather than alimony and would not have terminated upon the death of Tulay. In the alternative, respondent argues that, if the Court were to determine the payment was alimony, the same result would follow because the lump-sum payment was alimony in solido under Tennessee law, which would not terminate upon the death of Tulay.

Petitioner argues that the payment was rehabilitative alimony to cover the cost of Tulay's obtaining a postgraduate degree and, therefore, would terminate upon the death of Tulay. Petitioner claims that the $35,000 amount was determined "based on her receiving $600/month for 58 months, which represented approximate costs for graduate school and the length of time until * * * [the] youngest child would begin school respectively. * * * The $600/month was consistent with the rehabilitative alimony figures discussed during mediation."

At trial, both Sobieski and Mynatt testified as to the terms of the MDA. According to Sobieski, there was no agreement as to alimony payments at any time. She testified that the unequal division of assets, i.e., the "imbalance", was intended as an "equitable" division and that Tulay always claimed that she was entitled to more than 50 percent of the property.

Mynatt testified that correspondence with Tulay's previous counsel regarding division of property and a draft MDA prepared by Tulay's previous counsel indicated that there was to be alimony for Tulay in order for her to pursue a postgraduate degree. However, none of the correspondence with Tulay's previous counsel was presented as evidence, and Mynatt acknowledged that Sobieski never requested alimony on behalf of Tulay. Mynatt recalled discussing support for Tulay at the August 19, 2002, meeting, but he said that support was not

mentioned in the MDA because "It was her demand that she be given that payment of $35,000 instead."

The Supreme Court of Tennessee in Self v. Self, supra at 363-364, stated:

> Obviously, great care should be exercised by counsel and trial courts in crafting decrees.  The decree should reflect the court's findings with regard to the circumstances of the parties, the purpose or expected results of the relief granted, and the specific benefits granted to and obligations imposed upon the respective parties.  In addition to the rights and obligations of the parties with respect to each other, the liability for taxes, the rights of creditors, and other significant consequences may depend upon the preciseness of the language employed in the decree. Construction by the courts of uncertain and ambiguous language is a poor substitute for careful articulation.

Much litigation in this Court results from failure of negotiating parties to be precise in drafting the terms of marital agreements.  This case is an example of that type of litigation.

Though the payment reflected an unequal division of property in Tulay's favor, there is no requirement that marital property in Tennessee be divided equally in order for the division to be equitable.  See Norman v. Norman, 2005 WL 2860274, 2005 Tenn. App. LEXIS 687 (Ct. App., Oct. 31, 2005); see also Bookout v. Bookout, 954 S.W.2d 730, 731 (Tenn. Ct. App. 1997).  There are 11 statutorily prescribed factors to be considered.  Tenn. Code Ann. sec. 36-4-121(c).  For example, when dividing property, a court may take into consideration "The tangible or intangible contributions by one party to the education, training or

increased earning power of the other party". Tenn. Code Ann. sec. 36-4-121(c)(3). It may also consider "The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent". Tenn. Code Ann. sec. 36-4-121(c)(5). The unequal division of the marital property in this case, therefore, is inconclusive.

After examining all of the facts and circumstances, we conclude that the $35,000 payment by petitioner to Tulay was part of a property settlement. The MDA provides that the payment to Tulay was made from petitioner's retirement account, and there is no indication anywhere in the document that it was for alimony. The only evidence that the payment was intended as alimony is petitioner's and Mynatt's testimony and petitioner's handwritten notes. It is not clear that the payment would not be due if Tulay had died before it was made. See Rogers v. Commissioner, supra. The written agreement is the final agreement of the parties, and it leads to the conclusion that the $35,000 was designated as a division of property. The payment does not satisfy the requirement of section 71(b)(1)(D) and, therefore, is not deductible by petitioner.

Section 6662 Accuracy-Related Penalties

Under section 6662, a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax due to (1) negligence or intentional disregard of rules or regulations or (2) any substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). Section 6662(c) defines "negligence" as including any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and defines "disregard" as any careless, reckless, or intentional disregard.

An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). An "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return, less any rebate. Sec. 6662(d)(2)(A). Petitioner's understatement of tax for 2002 is substantial.

The section 6662(a) penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); see also Higbee v. Commissioner, 116 T.C. 438, 488 (2001). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made by taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his or

her proper tax liability, including an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances.  Id.

Petitioner intended and calculated that the $35,000 payment made to Tulay was rehabilitative alimony for her to obtain a postgraduate degree.  Looking to all of the facts and circumstances, it was reasonable for petitioner to believe that the $35,000 payment to Tulay was deductible alimony, and we conclude that he acted in good faith.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and for petitioner as to the penalty.