# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 14, 2010 Session

## SUZANNE H. McKIN, v. CHARLES DAVID McKIN

**Appeal from the Circuit Court for Hamilton County**
No. 09D1503    Hon. W. Jeffrey Hollingsworth, Judge

**No. E2010-01061-COA-R3-CV - Filed February 14, 2011**

In this divorce case the Trial Judge granted the parties a divorce, divided the marital property, and ordered transitional alimony to the wife until the husband pays the wife an amount ordered by the Court to render the property settlement equitable. The parties have appealed, and we modify the Judgment because the Trial Court inadvertently included an amount in the property division which he had found to be the separate property of the husband. We adjust the property division along the lines intended by the Trial Judge and set a definite time for the transitional alimony to comply with the statute.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed, as Modified.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellant, Charles David McKin.

H. Wayne Grant, and Jillyn M. O'Shaughnessy, Chattanooga, Tennessee, for the appellee, Suzanne H. McKin..

## OPINION

This divorce action was brought by the wife against the husband, and the husband

answered and counter-claimed. Following a prolonged evidentiary hearing, the Trial Court filed a Memorandum Opinion.

In the Trial Court's Opinion, the parties were declared divorced pursuant to Tenn. Code Ann. §36-4-129. The Court found the issues for decision were the valuation and distribution of the marital estate, and the wife's claim for alimony. The Court found that the parties had a relatively long marriage (18 years), and that both were in good physical health. The Court said that the husband had been diagnosed with bipolar disorder, but that it was controlled by medication, and that both parties had college degrees and could support themselves financially, but the husband had a talent for business and was better equipped to accumulate assets in the future.

The Court held the parties accumulated significant assets during their marriage, but that the evidence showed the husband did not inform the wife of the sale of his businesses which netted him over one million dollars. Additionally, the Court found that the husband had spent a significant amount of money, and had not worked since November 2008. The Court found the husband had cashed in a CD of over $215,000 and used that money, as well as money from other bank accounts, for his businesses and his own purposes. The Court said the husband's explanation for his failure to work was not convincing.

The Court found that the husband had significant separate property in his collection of firearms, and that he listed several firearms as gifts or pre-marital property. The Court found these firearms were the husband's separate property, and that they were valued at $63,925. The Court found that the wife basically had no separate property, and that while the marital home was located on property the wife might eventually inherit from her mother, it was not yet hers.

The Court valued and divided the marital assets, and the end result was that the husband received property worth $606,806 and the wife received property worth $343,761.

The Court ordered the husband to pay the wife $150,000 in cash to even out the distribution. The Court ordered that each party would keep the furnishings and personalty in his/her possession, and that as to the oriental rug collection, the parties would flip a coin and then alternate taking turns picking a rug until they were divided.

The Court held the husband would pay the debt of $5,677 to Ray Griffin, and that with regard to the debt claimed to be owed to Constance Wetmore for her investment in the husband's businesses, the Court found that this was not a marital debt because it was unclear whether she had a legal claim against the husband for repayment, and because Ms. Wetmore made the investment and the husband promised to repay it without the wife's knowledge.

The Court held that husband would be solely responsible for any debt to Ms. Wetmore.

With regard to the wife's claim for alimony, the Court found that both parties were in good health and well-educated, and that the wife had the training necessary to be an x-ray technician. The Court said that with her education she could earn at least $21.00 per hour, and that with the significant assets the wife was awarded in the property distribution, she did not have a need for rehabilitative alimony, but until the husband actually made the cash payment to the wife, the wife was in need of transitional alimony of $500 per month.

The parties have appealed to this Court and raised these issues:

1.  Did the Trial Court err in failing to reduce the value of the firearms that were considered marital property by the value of the husband's separately-owned firearms of $63,925?

2.  Did the Trial Court err in failing to consider as a marital debt the obligation owed to Ms. Wetmore?

3.  Did the Trial Court err in ordering the husband to pay the wife $150,000 in order to make the property settlement equitable?

4.  Did the Trial Court err in ordering transitional alimony to be paid to the wife, and in providing that it would continue until the payment of $150,000 was satisfied?

5.  If the husband does not pay the wife the $150,000 payment, should the wife receive an award of attorney's fees?

On appeal, the husband argues that the Trial Court made a mathematical error in its property distribution by including the total value of the firearms ($182,175 according to the husband) in the allocation of marital property, when $63,925 of that total amount was actually the husband's separate property, representing guns that he owned prior to the marriage or that were given to him as gifts. The Court did find that the firearms the husband listed as pre-marital or gifts were the husband's separate property, and that they were valued at $63,925.

The Court then included the total value of the firearm collection as listed in the distribution of marital property, however, rather than the difference between $182,175 and $63,925, which would have actually represented the marital portion of the firearm collection. We conclude that the Trial Court did make a mathematical error.

The wife argues that the Trial Court's actual error, however, was in finding the firearms listed as pre-marital or gifts to be the husband's separate property. She argues that the husband only had about five guns at the time of the marriage, and that the husband did not establish that the two firearms that he received during the marriage as gifts were actually gifts. The Trial Court clearly credited the husband's testimony regarding the firearms.

As we have previously recognized, the Trial Court is vested with wide discretion in its classification of property, and its decision in that regard is given great weight on appeal. *Whitley v. Whitley*, 2004 WL 1334518 (Tenn. Ct. App. June 14, 2004). Likewise, the same discretion is given the trial court's division of the property it has classified as marital. *Id.* The trial court's classification and division of property is a finding of fact, which is presumed to be correct unless the evidence preponderates against it. *Id.*; Tenn. R. App. P. 13(d).

We have previously explained that, "[s]eparate property is defined as '[a]ll real and personal property owned by a spouse before marriage,' and '[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent .' Marital property is defined, inter alia, as 'all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of the filing of a complaint for divorce[.]'" *Id.*

In this case, the husband testified that he owned several guns before the marriage and described those for the Court, and he testified that he had collected guns since his youth and became more interested in them while working for the Department of Defense right after college. The husband also testified that two of the guns on the list were given to him as gifts when he was a gun dealer. The wife did not dispute any of this testimony, except to say that she did not think the husband had that many guns prior to the marriage. The Trial Court credited the husband's testimony with regard to the firearms, and the evidence does not preponderate against the Court's findings with regard to this classification.

Next, the wife argues that the Trial Court's division of this asset was still fair due to the fact that the husband dissipated marital assets. While the husband lost some money in business ventures and had not worked in over a year at the time of the trial, he also made substantial amounts of money in other business ventures, and any dissipation was more than compensated for.

The Trial Court adopted the husband's classification and valuation regarding the firearms, but simply made a mathematical error in failing to deduct the value of the separate property from the total. Accordingly, the marital estate will be reduced by $63,925. The effect on the overall distribution will be taken into account in this opinion.

The husband argues the Trial Court erred in failing to consider the debt to Ms. Wetmore as a marital debt. The husband argues the trial court's finding was in error, since courts have defined "marital debts" as "all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *See Alford v. Alford*, 120 S.W.3d 810 (Tenn. 2003). He argues that since this debt was incurred during the marriage it has to be a marital debt. The husband admits, however, that marital debts are subject to equitable division in the same manner as marital property, and that when apportioning marital debts, the court should look at (1) the purpose of the debt, (2) which party incurred the debt, (3) which party benefitted from incurring the debt, and (4) which party is best able to repay the debt. *Id.*

In this case, the Trial Court's statement that this obligation was not a marital debt was technically in error, as the proof showed that the money was given to the husband during the course of the marriage. However, the Trial Court did not err in ordering that the husband would be solely responsible for the repayment of the debt. The husband benefitted from incurring the debt as it gave him the capital he needed to develop his oil changing machine (even though ultimately both parties saw benefit in an increase in the value of the marital estate). The husband is obviously better able to repay the debt, as he has shown a greater potential for making money in business and generating income for himself.

Ms. Wetmore testified that her debt had not been repaid, and that she expected to receive some return on her investment, but realized that if it was not invested wisely and the money was lost, that would be a risk she had taken. Ms. Wetmore admitted that she had never asked for the money to be repaid, but the husband testified that he intended to repay the debt, with interest, but had not done so despite receiving substantial amounts of money since the time of the investment. Thus, as the Trial Court implied, whether this "debt" was sufficiently proven as such is not clear. In any event, the Trial Court did not err in ordering that the wife should not have to repay any part of the money.

Next, the husband argues that the Trial Court erred in awarding an additional $150,000 cash payment to the wife in making an equitable property distribution. He argues that if the $63,925 value of separate firearms is deducted from the marital estate, and if the $100,000 debt to Ms. Wetmore is included as a marital debt and apportioned between the parties, then this $150,000 additional debt is not necessary. Having found that the debt to Ms. Wetmore was properly allocated to the husband, however, that only leaves the issue of how the $63,925 impacts on the overall distribution.

The Trial court distributed the marital estate $343,761 to the wife, and $606,806 to the husband, and the Court then ordered that the husband would pay $150,000 to the wife to make the distribution equitable, thus giving the wife $493,761 (51.9% of the total) and

leaving the husband with $456,806 (48.1% of the total). When the husband's separate property of $63,925 is deducted from the total marital estate, the total marital estate is reduced to $886,042, and the husband's share of same is reduced to $392,881, thus giving the husband 44% of the marital estate and wife 56%. This reduction in the husband's share of the total marital estate was not the intended result of the Trial Court.

The Trial Court intended for the parties to have a near-equal distribution, and that appears to be equitable given the evidence in this case. Both parties worked and contributed to the marital estate during this long-term marriage, and it would appear that a near-equal distribution is appropriate. Thus, a slight adjustment is necessary in order to give the parties the percentages the Trial Court intended in its equitable distribution. The husband's payment to wife will be reduced by $33,500, thus giving the wife $460,261 (51.9% of $886,642), and giving the husband 426,381 (48.1% of $886,642). Accordingly, the judgment awarded to the wife against the husband is reduced to $116,500 in order to effectuate the Trial Court's intended distribution.

Next, the husband argues the Trial Court erred in awarding the wife transitional alimony of $500 per month. He acknowledges that trial courts have broad discretion in determining the type, amount, and duration of an alimony award. *Burlew v. Burlew*, 40 S.W.3d 465 (Tenn. 2001). He argues the wife did not show a need for transitional alimony, and also that transitional alimony is intended to be for a definite period of time.

Tenn. Code Ann. §36-5-121(i) provides that a court should consider several factors in fashioning an award of alimony, including the age, health, and education of each party, each party's earning capacity, each party's contribution to the marriage, the separate assets of each party, etc., and that an award of alimony can be rehabilitative, transitional, periodic, or lump sum. Tenn. Code Ann. §36-5-121 also states:

(g)(1) Transitional alimony means a sum of money payable by one (1) party to, or on behalf of, the other party for a determinate period of time. Transitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded, such as a petition for an order of protection.

* * *

(4) The court may provide, at the time of entry of the order to pay transitional alimony, that the transitional alimony shall terminate upon the occurrence of other conditions, including, but not limited to, the remarriage of the party receiving

-6-

transitional alimony.

The ruling of the Trial Court was that transitional alimony of $500 per month would be awarded, until the $150,000 payment was made.

Regarding need, the wife testified that she earned a little over $1,600 per month ($12 per hour) as a dog groomer, which left her with a monthly shortfall of almost $1,000. The husband argued that her listed expenses were speculative, but she did demonstrate a need for the amount of alimony awarded, i.e. $500 per month, based on her current income. The Trial Court did not abuse its discretion in arriving at this amount. *See Gordon v. Gordon*, 2010 WL 4244345 (Tenn. Ct. App. Oct. 27, 2010).

Next, the husband argues that the statute provides that transitional alimony is to be paid "for a determinate period of time", although the Court can provide that it will terminate earlier upon the occurrence of a condition, such as remarriage. The wife countered that the statute does not define what is meant by a "determinate period of time", and that specifying the payments will continue until the lump sum amount is paid is a determinate period of time.

We find no case addressing this precise issue, but a review of the cases in which transitional alimony has been awarded demonstrate that it has consistently been awarded for a set period of time. *See, e.g., Douglas v. Douglas*, 2009 WL 21036 (Tenn. Ct. App. Jan. 2, 2009); *Gleaves v. Gleaves*, 2008 WL4922533 (Tenn. Ct. App. Nov. 13, 2008). We are of the opinion that the appropriate approach in this case is to determine a reasonable amount of time for traditional alimony and then specify that it would terminate earlier upon the husband paying the lump sum award. This will achieve the purpose of the alimony award without running afoul of the statutory language. We modify the trial Judgment and require that the wife be awarded $500 a month of transitional alimony for 24 months, but to terminate earlier upon the husband paying to her the lump sum award.

Finally, the wife argues that if her award of $150,000 is reversed, the husband should be required to pay her attorney's fees. While we did not reverse the award, it was modified to compensate for the separate property of the husband erroneously included in the marital estate. It would appear, however, that the wife will have sufficient assets from which to pay her attorney's fees in this case, even with this slight modification. We hold the Trial Court did not abuse its discretion in failing to make an award of attorney's fees to the wife.

We hold the Trial Court's Judgment regarding the property division is modified to correct the Court's mathematical error, such that the wife will be given an award of $116,500 to make the property distribution equitable. The wife's award of transitional alimony is modified to be for a determinate period of time with the provision that it will terminate upon

the husband's payment of the ordered lump sum payment if made before the expiration of the 24 month period.

We affirm the Judgment of the Trial Court, as modified, and remand, with the cost of the appeal assessed one-half to the husband and one-half to the wife.

_____
HERSCHEL PICKENS FRANKS, P.J.