IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 15, 2005 Session

## DAVID ANTHONY NORMAN v. MELISSA DAWN NORMAN

**Appeal from the Chancery Court for Williamson County**
**No. 27201     R.E. Lee Davies, Chancellor**

_____

**No. M2004-00738-COA-R3-CV - Filed October 31, 2005**

_____

In this third appeal from a Williamson County divorce, the wife challenges the trial court's valuation and distribution of the marital estate and award of alimony upon remand. Both parties seek an award of attorney's fees. The husband seeks damages for frivolous appeal. We affirm the trial court's valuation and distribution and award of alimony and deny the husband's frivolous appeal damages request.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

John D. Schwalb, D. Scott Porch, IV, Franklin, Tennessee, for the appellant, Melissa Dawn Norman.

Rose Palermo, Nashville, Tennessee, for the appellee, David A. Norman.

### OPINION

This appeal marks the third appearance by Mr. and Ms. Norman before this court. Mr. Norman filed the first appeal, which resulted in an opinion of this Court on March 4, 2003. Extensive procedural maneuvering both in the trial court and in this Court preceded the opinion of March 4, 2003:[1]

> After approximately seven years of marriage and the birth of two children, on July 11, 2000, Husband filed for divorce. As grounds, Husband alleged the existence of irreconcilable differences. Wife soon answered and admitted the existence of irreconcilable differences, but also counter-claimed alleging inappropriate marital

_____

[1] This Court, in response to proceedings in the trial court supplemental to the final order of the trial court, issued a supplemental opinion on March 11, 2003.

conduct. Eventually, Husband amended his complaint to include inappropriate marital conduct as grounds for the divorce as well.

Before the case could proceed to trial, the parties unloaded a montage of motions that resulted in several hearings. Consequently, several pre-trial orders were issued by the trial court.

. . .

Eventually, the parties agreed to withdraw several motions and a trial date was set for September 11, 2001.[1] In the interim, however, Husband amended his complaint again, this time alleging that additional acts of inappropriate marital conduct had occurred since the filing of his original complaint. Similarly, Wife amended her counter-complaint alleging adultery and further inappropriate conduct as well. Husband answered denying the allegations and stated that Wife's ill conduct constituted an affirmative defense to the inappropriate conduct. Wife filed a similar response.

Following the trial, which appears from the record to have been lengthy and extremely contentious, the trial court issued a Memorandum and Final Judgment. In its Memorandum, issued on October 19, 2001, the court found Husband to be the sole cause of the marriage's demise and granted the divorce to Wife on the grounds of inappropriate marital conduct and adultery.

. . .

First, after determining Husband's average monthly gross income to be $12,536 based on his August 2001 pay stub, the court set child support at $2,744 per month in accordance with the guidelines. Next, the court ordered Husband to pay Wife alimony *in futuro* in the amount of $3,000 per month for ten (10) years or until Wife's death or remarriage. In doing so, the court stated that rehabilitation was not feasible and that the award was not designed to be punitive in nature. Finally, the court vacated Judge Davies' *pendente lite* order that stated that Wife had sufficient assets to pay her attorney's fees. Consequently, the court ordered Husband to pay $30,000 towards Wife's attorney's fees and legal expenses.

On October 26, 2001, a Final Judgment was entered in accordance with the Memorandum. The Final Judgment, in addition to ordering Husband to pay the items listed above, awarded each party their separate property and divided the marital property. In dividing the marital property, the court ordered Husband to pay $70,000 from his savings and retirement plans to Wife and pay an additional $8,000 to Wife for her interest in Husband's car. In total, including the attorney's fees, Husband was ordered to make a money payment of $108,000 to Wife.

[1]Because of the acts perpetrated against our country on September 11, 2001, the trial was reset for the following day.  Further, due to a scheduling conflict, the Honorable R.E. Lee Davies, the original judge, was replaced by the Honorable Russell Heldman.

*Norman v. Norman,* 2003 WL 724677, *3-4.  ("*Norman I*")

A week after the release of *Norman I*, this Court released its opinion dispositive of a Tennessee Rule of Appellate Procedure Rule 10 Motion filed during the pendency of the appeal. *Norman v. Norman ("Norman II")*, No. M2002-01084COA-R3-CV, 2003 WL 1018135 (Tenn.Ct.App. March 11, 2003).  Because *Norman II* dealt primarily with child support, our resolution of those issues in *Norman II* only serves to accentuate the tenacious nature of the parties' conflict.

The holdings on appeal from *Norman I* are of particular importance in the current appeal. First, we held that the $28,000 inheritance which the trial court awarded as separate property to the wife had in fact been transmuted into marital property when it was used as part of a down payment for the marital home.  We required that the $71,252.18, which represented the increase in value to the Husband's 401K since the marriage, should be divided as marital property pursuant to Tennessee Code Annotated section 36-4-121(b)(1)(B) and consistent with the Tennessee Supreme Court's decision in *Cohen v. Cohen*, 937 S.W.2d 823, 830 (Tenn.1996).  Finding that the liabilities listed by the wife and adopted by the trial court in its 2001 judgment were incomplete, we remanded the case for specific findings of fact:

> In light of our inability to make sense of the trial court's Memorandum and Final Judgment, we remand to the trial court with instructions to make specific findings of fact as to what items are separate property, to whom they are assigned and the value given to each item.  The court is also instructed to make specific findings of fact as to what items are marital assets, what items are marital liabilities, to whom the items are assigned and the value given to each item.  Also, the trial court should take into consideration this Court's decision with regard to the classification of the parties' home and Husband's 401(k) plan.

*Norman,* 2003 WL 724677, *7.

In addition, we vacated the trial court's provision of alimony *in futuro*:

> This Court sees no reason why rehabilitation of Wife is not possible.  Wife is thirty-five (35) years old and in good health.  Wife is also college-educated with a degree in business management.  Since receiving her degree in 1990, Wife worked for various employers thru 1997. Wife testified that the last year she was employed full-time was 1996 and that she stopped working all together in 1997.

-3-

In light of Wife's age, her good health, her educational background, and work history, we find that the trial court abused its discretion in finding that rehabilitation is not feasible. Thus, we vacate the trial court's award of long-term alimony. However, in light of our disposition of the issues regarding the distribution of the separate and marital property, we will not address the amount and duration of the spousal support. Since Tennessee Code Annotated section 36-5-101(d)(1)(G) and (H) provide that the parties' separate assets and the distribution of marital property "may have an effect upon the amount of support and maintenance," the trial court is instructed to reconsider the amount of support awarded in light of the revised property distribution and in light of the Court's finding that Wife is capable of rehabilitation. *See Cooper v. Cooper*, No. 85-305-II, 1986 Tenn.App. LEXIS 3323, at *7-8 (Tenn.Ct.App. Oct. 1, 1986).

*Id*. at *9

Finding the trial court also abused its discretion in setting the amount of child support, we vacated that portion of the decree as well. In subsequent litigation before this Court, the child support provisions would continue to prove problematic. Both parties requested their respective attorneys' fees on appeal. These requests were denied, and the cause was remanded. Following the decisions in *Norman I* and *Norman II*, mandate issued. Mr. Norman filed his Motion to Set Hearing on Remand on May 29, 2003. The case was set for hearing, and on November 20, 2003, the trial court issued its Memorandum Opinion which provided in pertinent part:

This case is before the Court upon remand by the Court of Appeals pursuant to its orders of March 4, 2003 and March 11, 2003.

DIVISION OF PROPERTY

Separate Property

Mr. Norman shall receive $72,483 from his 401K plan as his separate property. This amount represents the value of his 401K plan at the time of the marriage. In addition, he will receive his Roth IRA in the amount of $2,382.

Mrs. Norman shall receive as her separate property the Roth IRA in the amount of $2,000, the growth fund of $18,693, the Washington Mutual Fund in the amount of $16,750 and the Cap Income fund of $10,290.

Marital Property

The first issue before the Court is the division of the parties' property. Exclusive of retirement, the only substantial asset of the parties is their residence located at 216 Lighthouse Terrace. All of the equity in said property is marital

property. The Court finds the house has a value of $270,000. After subtracting the mortgage of $187,800 and the cost of selling said home, the Court finds the net equity to be $63,300. The house will be listed for sale beginning January 2004, and the court appoints Danny Anderson, realtor to market this property. The net proceeds will be divided equally between the parties.

The 298 shares of Promus stock shall be cashed in and divided equally between the parties. Mr. Norman also has certain stock options, some of which were vested at the time of the divorce and some of which will vest in the future. It is the intent of the Court to divide these shares pursuant to the formula discussed by the parties at the hearing. The parties are directed to incorporate in the Final Decree the formula for dividing this asset to the extent that Mrs. Norman receives credit for options received during the marriage but which may vest at a later time.

The furniture and furnishings shall be divided pursuant to the Court's directives from the bench during the hearing. The remaining marital property shall be divided as follows:

### To Mr. Norman

| Description | Value |
| --- | --- |
| I.D.S. Universal Life Policy | $ 6,817 |
| I.C.A. Mutual Fund | $ 69 |
| One-half of balance of 401K plan | $43,917 |
| 1995 Ford Explorer | $ 1,200 |
| 1994 Nissan ZX | $ 9,930 |
| 1993 Cadillac Seville | No value |
| Money spent on girlfriend | $ 1,500 |
| | |
| TOTAL | $43,433 |

### To Mrs. Norman

| Description | Value |
| --- | --- |
| I.D.S. Variable Annuity | $25,415 |

| | |
|---|---|
| I.D.S. AXP Univsersal | $ 628 |
| One-half of balance of 401K plan | $43,917 |
| All remaining American Express points | $ 1,250 |
| | |
| TOTAL | $71,210 |

## MARITAL DEBT
### To Mr. Norman

| Description | Value |
|---|---|
| American Express | $ 1,630 |
| Fusion MasterCard | $ 4,173 |
| First USA Visa | $ 412 |
| Texaco | $ 415 |
| Rooms to Go | $ 1,605 |
| | |
| TOTAL | $ 8,235 |

### To Mrs. Norman

| Description | Value |
|---|---|
| Wife's Chase MasterCard | $11,360 |
| Wife's ATT MasterCard | $15,698 |
| Wife's CitiBank MasterCard | $ 950 |
| | |
| TOTAL | $28,008 |

## ALIMONY

In its order of March 4, 2003 the Court of Appeals instructed the trial court to reconsider the amount of alimony awarded in light of the revised property distribution and in light of the Court of Appeals' finding that Mrs. Norman is capable of rehabilitation. Mrs. Norman is thirty-seven years old. She has a college degree in Business Management and last worked full time in 1996 earning $31, 000 a year working in hotel management. The parties have two daughters, Ashley, who is six years old and Taylor, who is four years old. At this time Taylor has a speech disability which requires therapy three days a week. It is the recommendation of her therapist that Taylor continue with her current therapy schedule to facilitate and stimulate her speech and language skills. The Court finds that the parties can reasonably predict these services will be needed for three more years.

Mr. Norman is employed by Hilton Hotels. The Court finds that his 2002 income was $114,773. For 2003 Mr. Norman anticipates an annual income of $126,011. Therefore, Mr. Norman's average income over the last two years amount to $120,393 or $10,033 a month gross. The Guidelines anticipate a net monthly amount of $7,191 and from this net amount Mr. Norman is paying $2,100 a month in child support and $306 a month for COBRA.

Based upon all the above, the Court finds Mr. Norman should continue to pay rehabilitative alimony in the amount of $2,377 a month for a period of three years beginning November 2003 and terminating upon the death of husband or remarriage of wife. In setting the length of rehabilitative alimony, the Court has taken into consideration that Mrs. Norman has already received two years of rehabilitative alimony since November 2001. The Court is disappointed that Mrs. Norman has in effect allowed two years to go by without making any significant effort to improve her economic status and urges her to use her remaining three years of alimony wisely.

## ATTORNEY'S FEES

At the initial trial in this case Judge Heldman awarded Mrs. Norman $30,000 out of $57,715 requested in attorney's fees and additional legal expenses. Mrs. Norman is requesting even more fees as a result [of] the second trial in this case. Mr. Norman objects, contending that much of the fees in this case were incurred because of unreasonable positions taken by Mrs. Norman which required litigation. This Court finds Mrs. Norman is entitled to a $30,000 judgment as *alimony in solido* for the initial attorney's fees which she incurred at trial. The basis for this award is grounded on the fact that Mr. Norman was found to be totally at fault for the break up of this marriage and the fact that Mrs. Norman has few assets or present ability to pay these attorney's fees. The Court however declines to award any further fees or expenses to Mrs. Norman. Court costs shall be taxed to Mr. Norman.

On December 8, 2003, Ms. Norman filed her motion pursuant to Tennessee Rule of Civil Procedure 52.02 requesting amendment of the court's finding and seeking additional factual findings. In this motion, Ms. Norman drew the trial court's attention to the mathematical error in calculating the total amount of assets awarded to the husband and requested additional marital property to offset the $20,000 difference in value between the total as added in the opinion and the total as corrected. In paragraph nine (9) of Ms. Norman's motion she requested the following amendment to the court's findings relative to rehabilitative alimony:

Delete the finding on page 4 that Mr. Norman should continue to pay rehabilitative alimony of $2,377 a month for three years and add a finding that rehabilitation for Mrs. Norman to achieve an earning capacity that will permit her "standard of living to be reasonably comparable to the standard of living enjoyed during the marriage," or to the "post-divorce standard of living expected to be available" to Mr. Norman, as required by T.C.A. 36-5-101(d)(1)(B) and (C), will not occur within eight years in view of Mrs. Norman's responsibility of caring for the two young daughters of the parties, because during the marriage she focused on "the personal side of the marriage, including the care and nurturing of the children," and made contributions as homemaker and parent, and Mr. Norman focused primarily on his work and obtaining increasing compensation and this resulted "in economic detriment to" Mrs. Norman because she "subordinated her own personal career for the benefit of the marriage," and, therefore, Mrs. Norman should be awarded rehabilitative alimony in the amount of $3,000 a month for eight years.

In addition, Ms. Norman made the following requests which are relative to this appeal:

14.    Add a finding that Mr. Norman's vested and unvested stock options for stock of Hilton Hotels Corporation and their option dates and prices are as shown on Exhibit 14 (Mr. Norman's answer to interrogatory 3 of Defendant's Fourth Set of Interrogatories) as follows:

| NUMBER | OPTION DATE | SHARES GRANTED | PRICE | VESTED | UNVESTED |
|---|---|---|---|---|---|
| H02533 | 1/12/2000 | 7,600 | $ 9.21875 | 5700 | 1900 |
| H03537 | 1/23/2001 | 7,700 | $12.21875 | 3850 | 3850 |
| H04395 | 1/31/2002 | 7,800 | $11.85000 | 1950 | 5850 |
| H05301 | 1/29/2003 | 7,300 | $11.87000 | 0 | 7300 |
| TOTAL | | 30,400 | | 11,500 | 18,900 |

15.    Add a finding that said stock was worth $16.84 a share on October 17, 2003 and that said vested options have the following values: H02533 for 5700 shares,

option price $9.22, value $43,434; H03537 for 3850 shares, option price $12.22, value $17,787; H04395 for 1950 shares, option price $11.85, value $9,730.50; total value of vested options $70,951.50.

16. Add a finding that Mr. Norman shall cause to be transferred to Mrs. Norman as a division of marital property one-half of all said vested options.

17. Add a finding that the unvested options have the following values: H02533 for 1900 shares, option price $9.22, value $14,478; H03537 for 3850 shares, option price $12.22, value $17,787; H04395 for 5850 shares, option price $11.85, value $29,191.50; H05301 for 7300 shares, option price $11.87, value $36,281; total value of unvested options $97,737.50.

18. Add a finding that Mrs. Norman is awarded as additional marital property interests in said unvested options equal to the difference between the option price and the price of shares at the time the options vest multiplied by a fraction, the numerator of which is the number of days after the option date to October 30, 2003 and the denominator is the number of days after the option date to the date the option vests.

19. Add a finding that Mr. Norman should pay the court costs and discretionary costs in this case.

On December 12, 2003, Mr. Norman filed his Plaintiff's Response To Defendant's Motion and Defendant's Counter Motion, in which he acknowledged the mathematical error. He requested a ruling regarding the repayment of an alleged child support overage paid to Ms. Norman in the amount of $7,659.35. He also requested a ruling involving the duration of medical insurance premiums and certain unpaid medical expenses which remained overlooked in the first Memorandum Opinion. The trial court entered its Order on these Motions on December 22, 2003. The Order contains the following provisions relevant to this appeal:

1. Mrs. Norman is correct that the total amount of marital property awarded to Mr. Norman on Page 2 of the Opinion comes to $63,433. However, this does not change the Court's division of the property. Mrs. Norman is still receiving 53% of this property, which is an equitable division.

2. The vested and unvested stock option for stocks of Hilton Hotels Corporation are as follows

| NUMBER | OPTION DATE | SHARES GRANTED | PRICE | VESTED | UNVESTED |
|--------|-------------|----------------|-------|--------|----------|
| H02533 | 1/12/2000 | 7,600 | $ 9.21875 | 5700 | 1900 |

| H03537 | 1/23/2001 | 7,700 | $12.21875 | 3850 | 3850 |
| H04395 | 1/31/2002 | 7,800 | $11.85000 | 1950 | 5850 |
| H05301 | 1/29/2003 | 7,300 | $11.87000 | 0 | 7300 |
| **TOTAL** | | **30,400** | | **11,500** | **18,900** |

The total amount of vested options comes to 11,500. Each party is entitled to one-half of these vested options. Therefore, Mr. Norman shall cause 5,750 vested options to be transferred to Mrs. Norman. There are 18,900 unvested options. As additional marital property, Mrs. Norman is awarded an interest in said unvested options equal to the difference between the option price and the price of shares at the time the options vest multiplied by a fraction, the numerator of which is the number of days after the option date to October 30, 2003 (the date of trial) and the denominator is the number of days after the option date to the date the option vests.

On January 7, 2004, a Final Judgment was entered in accordance with the court's prior Order on the Motions to Alter or Amend. This judgment incorporated the provisions of the Order and provided the following:

1.    Mr. Norman is awarded $72,483 from his interest in his employer's 401K plan and his Roth IRA in the amount of $2,382 as his separate property.

2.    Ms. Norman is awarded as her separate property her Roth IRA in the amount of $2,000, the growth fund of $18,693, the Washington Mutual fund of $16,750 and the Cap Income fund of $10,290, their values as of the time of the original divorce trial.

3.    The residence of the parties at 216 Lighthouse Terrace, Williamson County, Tennessee, is marital property with a net equity of $63,300. Said residence shall be listed for sale beginning in January 2004 and the Court appoints Danny Anderson as the Realtor to market said property. The net proceeds of the sale of said property shall be divided equally between Mr. Norman and Ms. Norman.

4.    The 298 shares of Promus stock in Mr. Norman's name shall be sold by Mr. Norman and he shall pay Ms. Norman one-half of the net proceeds from the sale of said shares after deduction for tax payment that will result form the sale.

5.    The vested and unvested stock options for stock of Hilton Hotels Corporation are as follows:

| NUMBER | OPTION DATE | SHARES GRANTED | PRICE | VESTED | UNVESTED |
| --- | --- | --- | --- | --- | --- |

| H02533 | 1/12/2000 | 7,600 | $ 9.21875 | 5700 | 1900 |
|--------|-----------|-------|-----------|------|------|
| H03537 | 1/23/2001 | 7,700 | $12.21875 | 3850 | 3850 |
| H04395 | 1/31/2002 | 7,800 | $11.85000 | 1950 | 5850 |
| H05301 | 1/29/2003 | 7,300 | $11.87000 | 0 | 7300 |
| **TOTAL** | | **30,400** | | **11,500** | **18,900** |

The total amount of vested options comes to 11,500. Each party is entitled to one-half of these vested options. Therefore, Mr. Norman shall cause 5,750 vested options to be transferred to Ms. Norman. There are 18,900 unvested options. As additional marital property, Ms. Norman is awarded an interest in said unvested options equal to the difference between the option price and the price of shares at the time the options vest multiplied by a fraction, the numerator of which is the number of days after the option date to October 30, 2003 (the date of trial) and the denominator is the number of days after the option date to the date the option vests.

6. Mr. Norman is awarded as marital property the following:

| Description | Value |
|-------------|-------|
| I.D.S. Universal Life Policy | $ 6,817 |
| I.C.A. Mutual Fund | $ 69 |
| One-half of balance of 401K plan | $43,917 |
| 1995 Ford Explorer | $ 1,200 |
| 1994 Nissan ZX | $ 9,930 |
| 1993 Cadillac Seville | No value |
| Money spent on girlfriend | $ 1,500 |
| | |
| TOTAL | $63,433 |

7. Ms. Norman is awarded as marital property the following:

| Description | Value |
|-------------|-------|
| I.D.S. Variable Annuity | $25,415 |
| I.D.S. AXP Univsersal | $ 628 |

One-half of balance of 401K plan            $43,917

All remaining American Express points   $ 1,250


TOTAL                                            $71,210

8.      Mr. Norman shall cause to be transferred by Qualified Domestic Relations Order to Ms. Norman one-half of his interest in excess of $72,483 in his employer's 401K plan in the amount of $43,917 plus or minus any increase or decrease in that amount based on market forces until the date of the transfer.

9.      Mr. Norman shall be responsible for payment of the following marital debts:

| Description | Value |
| --- | --- |
| American Express | $ 1,630 |
| Fusion MasterCard | $ 4,173 |
| First USA Visa | $    412 |
| Texaco | $    415 |
| Rooms to Go | $ 1,605 |
| TOTAL | $ 8,235 |

10.    Ms. Norman shall be responsible for payment of the following debts which she incurred:

| Description | Value |
| --- | --- |
| Wife's Chase MasterCard | $11,360 |
| Wife's ATT MasterCard | $15,698 |
| Wife's CitiBank MasterCard | $    950 |
| TOTAL | $28,008 |

11. Mr. Norman shall pay to Ms. Norman child support for the parties' two minor children of $2,100 a month based on his average income of $10,033 a month. He shall make said payments to Ms. Norman on or before the 5th day of each month beginning January 5, 2004. Mr. Norman's child support payments to Ms. Norman shall be reduced to $1,800 a month for January through December 2004 and to $2,003 for January 2005 to satisfy the judgment of $3,696.56 awarded him in said Order of December 22, 2003 for overpayment of child support.

12. Mr. Norman shall pay rehabilitative alimony to Ms. Norman of $2,377 a month on the 5th day of each month through October 2006 or until the death of Mr. Norman or the death or remarriage of Ms. Norman, whichever occurs first.

In addition to the above, the trial court also awarded $30,000 alimony *in solido* accounting for attorney's fees incurred by Ms. Norman. The husband filed another Motion to Alter or Amend on January 30, 2004, urging that the stock options granted post-October 2001 constituted Husband's separate property and arguing that Wife made no contribution to the value of said options and was therefore unentitled to a portion of the value of the same. The trial court requested submission of supplemental authorities on the issue. After considering the Motion to Alter or Amend and the supplemental authorities, the trial court entered an Order on February 20, 2004, which stated the following:

The trial court's original memorandum and final decree was entered by Judge Heldman in October, 2001. This order was appealed and reversed by the Court of Appeals and remanded back to the trial court by the Court of Appeals in its order entered on March 4, 2003. Neither party appealed the awarding of the divorce by the trial court in its order of October, 2001. The issues on appeal were division of property, child support, alimony and attorney fees.

In its final judgment dated January 8, 2004, this court valued the stock options as of the date of the second trial on October 30, 2003. Mr. Norman contends the court erred in not dividing said options as of the date that the divorce was entered in October 2001.

T.C.A. 36-4-121(b)(1)(A) provides:

Marital property means all real and personal property ... acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of the filing of the complaint for divorce ... and valued as of the date as near as reasonably possible to the final divorce hearing date.

-13-

In construing the meaning of the term "final divorce hearing date" our appellate courts have held that the appropriate date for valuing the parties' property is the date a decree is entered declaring the parties divorced. *Dunlap v. Dunlap*, 996 S.W.2d 803, 817 (Tenn.App.1998). In *Preston v. Preston*, 1995 WL 10345 (Tenn.App.1995) the Court of Appeals addressed this exact issue. In *Preston*, the trial judge granted the wife a divorce on July 3, 1990; however, by agreement the issues of alimony and division of marital property were reserved for a later date. On October 12, 1993 the trial court entered an order dividing the marital property as of the date of the divorce, July 3, 1990. Ms. Preston contended there was a material increase in the value of the marital assets between the date of the divorce decree and the date of the final hearing determining the value of the marital assets. She argued (as does Ms. Norman) that the phrase "final divorce hearing date" can only mean the date when the final hearing on the issue of marital property occurred in October 1993. The Court of Appeals found that no further evidence pertaining to the issue of the divorce was heard by the trial court after July 3, 1990 and held that any property coming into either party's ownership after that date would not be properly classified as marital property as it would not have been acquired during the course of the marriage.

As a result of the foregoing, this court finds it improperly valued the stock options as of October 2003, rather than October 2001, the date the divorce was granted to Ms. Norman.

Ms. Norman filed a timely notice of appeal, and the case is once again before us for consideration of the proper valuation and distribution of the marital assets as well as the award of alimony and attorneys' fees. Ms. Norman raises the following issues:

A. Whether the trial court's failure to adjust its division of marital property after it acknowledged calculating a $20,000 mathematical error in Mr. Norman's favor was an abuse of discretion and against the weight of the evidence.

B. Whether the trial court erred as a matter of law when it determined that the proper date for valuing certain stock options was October 2001 rather than October 2003.

C. Whether the trial court's determination of the amount and duration of rehabilitative alimony was against the weight of the evidence.

D. Whether trial court abused its discretion in failing to award Mrs. Norman her attorney's fees and costs.

In his responsive brief, Mr. Norman requests damages for frivolous appeal pursuant to Tennessee Code Annotated section 27-1-122.

**Evaluation and Distribution of Marital Property**

Before embarking on the analysis of the issues raised, and by way of summary, a comparison of the various orders evaluating and distributing the parties' marital property and debt is necessary. The court's original order on remand awarded the following property to Mr. Norman:

| Description | Value |
| --- | --- |
| I.D.S. Universal Life Policy | $ 6,817 |
| I.C.A. Mutual Fund | $ 69 |
| One-half of balance of 401K plan | $43,917[2] |
| 1995 Ford Explorer | $ 1,200 |
| 1994 Nissan ZX | $ 9,930 |
| 1993 Cadillac Seville | No value |
| Money spent on girlfriend | $ 1,500 |
| TOTAL | $43,433 |

[2]This includes $3,400 for the car loan which is an asset of the plan.

In denying Ms. Norman's Motion to Amend Findings and Make Additional Findings the court entered an order providing that the amount of property awarded should actually total $63,433. "However," said the court, "this does not change the court's division of the property. Mrs. Norman is still receiving 53% of this property, which is an <u>equitable division</u>." (emphasis added)

As discussed earlier herein, our statutes and rules accord broad deference to the discretion of the trial court in its valuation and distribution of marital property.

> After characterizing the parties' assets as either marital or separate property, the trial court must give parties their separate property and make an equitable division of marital assets. *See Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn.Ct.App.1988). An equitable division of property does not necessarily mean an equal division. *See Bookout v. Bookout*, 954 S.W.2d 730, 732 (Tenn.Ct.App.1997); *Batson*, 769 S.W.2d at 859. "The division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property." *King v. King*, 986 S.W.2d 216, 219 (Tenn.Ct.App.1998) (citing *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn.1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn.1988); *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn.Ct.App.1994)).

*Norman*, 2003 WL 724677 at *3.

Ms. Norman now complains that, since the court did not adjust the distribution of the debt at the same time it acknowledged the mathematical error in Mr. Norman's favor, the percentage of

the net estate does not constitute an equitable distribution of property.  Ms. Norman makes the following request:

> This Court should look to the trial court's original expression of the division of total assets and determine, as a matter of law, that the trial court intended to apportion 55.1 percent of marital assets to Mrs. Norman and that such an apportionment represents an equitable division of marital property considering the facts of this particular case. (As the trial court made no particular findings of fact to support its division of the marital assets – as it was directed to do by this Court in *Norman I* – this Court should presume that the trial court's initial determination to award Mrs. Norman 55.1 percent of the marital assets was an equitable division of marital property.)

In properly dividing the marital estate, the trial court must of necessity include the division of marital assets and the allocation of marital debts.  *Robertson v. Robertson*, 76 S.W.3d at 341; *see also Woods v. Woods*, 2005 WL 1651787 at *6.  We have said:

> Dividing a marital estate includes both the division of the marital assets and the allocation of the marital debts.  *Robertson v. Roberston*, 76 S.W.3d at 341. Accordingly, marital debts are subject to equitable allocation, *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 243 (Tenn.Ct.App.1995), and the same rules of fairness and equity which apply to the equitable division of marital assets apply to the division of marital debts.  *Hardy v. Hardy*, 311 S.C. 433, 429 S.E.2d 811, 813-14 9S.C.Ct.App.1993).  Marital debts are debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing.  *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn.2003).  In the context of divorce proceedings, the courts should allocate the debts considering the following factors: (1) the debt's purpose, (2) the party who incurred the debt, (3) the party or parties who benefitted from incurring the debt, and (4) the party best able to repay the debt.  *Alford v. Alford*, 120 S.W.3d at 814; *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn.Ct.App.1989).
>
> The division of the marital debt is heavily fact-dependent; therefore, there are no bright-line rules providing guidance for the distribution of marital debt.  However, the prior cases provide several helpful rules-of-thumb.  First, for example, it is commonplace for debts to follow the assets they purchased.  Second, the courts are now generally inclined to award economically disadvantaged spouses a small portion of the marital debt in cases where there are few marital assets.  Third, when a marital debt is owed to a party who is related to one of the spouses, the debt is frequently assigned to the spouse who is related to the creditor.  In the final analysis, the justness of the allocation of the marital debt, like the division of **marital property**, depends on the final results.  *King v. King*, 986 S.W.2d at 219; *Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn.Ct.App.1990).

*Woods*, 2005 WL 1651787 (Tenn.Ct.App. July 12, 2005) (footnotes omitted).

Ms. Norman makes no showing that the actual values in the award, with the exception of the value of the stock options at issue, are against the weight of the evidence adduced at trial. Any argument along these lines is severely hampered by her failure to comply with this Court's Local Rule 7 which provides:

**Rule 7. Briefs in Domestic Relations Cases. —** (a) In domestic relations appeals where the issues involve the amount or the disposition of the marital property, the appellant's brief shall contain in the statement of facts or in an appendix, an orderly tabulation of all marital property in a form substantially like the form attached hereto. All entries in the table as to value and to whom the property was awarded shall be accompanied by a citation to the record where the information may be found.

(b) If the appeal involves issues about the separate property of either party or the allocation of the marital debts, the appellant's brief shall contain a separate table in the same form showing the pertinent information for that disputed issue.

(c) If the appellee disagrees with the appellant's tabulation, the appellee's brief shall contain a tabulation in the same form showing the appellee's version of the facts.

| MARITAL PROPERTY | APPELLANT'S VALUE | APPELLEE'S VALUE | VALUE FOUND BY TRIAL COURT | PARTY TO WHOM PROPERTY AWARDED BY TRIAL COURT |
|---|---|---|---|---|
| 1.(Descripton) | $ <br> (Citation to record) | $ <br> (Citation to record) | $ <br> (Citation to record) | Husband or Wife <br> (Citation to record) |

Tenn.Ct.App.R. 7 (2005).

The crux of Ms. Norman's argument is her assertion that the net percentage resulting from the error's correction is unsupported by the record or our statutes. We cannot find any such lack of support. The order of the trial court is affirmed with respect to the overall evaluation, and especially in light of the following discussion concerning the valuation of the stock options.

Mr. Norman was employed by Promus Hotel Corporation at the time Promus was acquired by Hilton Hotels. As part of his compensation from Promus and Hilton, he had received options to purchase in excess of 30,000 shares of stock. At the time of the parties' original divorce decree, the total amount of vested and unvested stock options were as follows:

| NUMBER | OPTION DATE | SHARES GRANTED | PRICE | VESTED | UNVESTED |
|---|---|---|---|---|---|
| H02533 | 1/12/2000 | 7,600 | $ 9.21875 | 5700 | 1900 |

| | | | | | |
|---|---|---|---|---|---|
| H03537 | 1/23/2001 | 7,700 | $12.21875 | 3850 | 3850 |
| **TOTAL** | | **15300** | | **9550** | **5750** |

Ms. Norman argues that the order "finally dividing the marital property" for the purposes of valuing the estate pursuant to Tennessee Code Annotated section 36-4-121, would be the final order upon remand entered by the trial court February 20, 2004. Without citation of authority for this proposition, Ms. Norman urges that when an order distributing marital property is remanded to the trial court for specific findings, the order on remand is of necessity that order contemplated by section 121, and therefore the appropriate time for valuation. The stock options as they existed on remand were as follows:

| NUMBER | OPTION DATE | SHARES GRANTED | PRICE | VESTED | UNVESTED |
|---|---|---|---|---|---|
| H02533 | 1/12/2000 | 7,600 | $ 9.21875 | 5700 | 1900 |
| H03537 | 1/23/2001 | 7,700 | $12.21875 | 3850 | 3850 |
| H04395 | 1/31/2002 | 7,800 | $11.85000 | 1950 | 5850 |
| H05301 | 1/29/2003 | 7,300 | $11.87000 | 0 | 7300 |
| **TOTAL** | | **30,400** | | **11,500** | **18,900** |

The order granting these parties a divorce was entered on October 19, 2001. There can be no question that the vested option to purchase 1,950 shares of Hilton stock and the unvested option to purchase 14,250 shares were acquired after that date.

The trial court is afforded broad discretion in valuing and distributing property in a divorce action. *See Ford v. Ford,* 952 S.W.2d 824, 825 (Tenn.Ct.App. 1997). But this discretion is circumscribed by the boundaries set out in Tennessee Code Annotated section 36-4-121. This section not only provides the definition of the various property classes, but provides the criteria for determining an equitable distribution.

> In making equitable division of marital property, the court shall consider all relevant factors including:
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. §36-4-121(c).

It also bears noting that the earliest of these options was acquired by the husband no more than six months prior to the filing of the first complaint for divorce, said complaint being filed after seven years of marriage. The transcript before this court reveals the following testimony by Mr. Norman:

Q. Oh, one thing I need to ask you about your stock options.
On your proposed division of property, Exhibit 2A, you show stock options down there at the bottom, and you say current value $14,480.38. And it says, 1900 shares at an option price of $9,021 –
THE COURT: I think $9 –
MR. DAVIS: Nine – nine dollars –
THE COURT: It's ongoing.
BY MR. DAVIS:
Q. – and a little better, $9.22 with the stock price at $16.84. That was October 17th at close?
A. Yes, sir.
Q. And then you say that's those things you put in there.
Now you have a lot more than 1900 shares of – of – of options for more – a lot more than 1900 shares, don't you?

A. Yes, at the time – at the time of the divorce only 1900 shares were vested.

Q. Yes.

A. Those were unvested.

\*\*\*

THE COURT: So do y'all have a sheet that breaks down the total number of options that you have, Mr. Norman, vested and unvested, and when you received those options. In other words, do you get options, one options every year?

THE WITNESS: You have the possibility of getting the options every year.

THE COURT: All right. Well, let's see. This cause was tried in September of 2001. Have you received more options?

THE WITNESS: Yes, I received --

THE COURT: Since then?

THE WITNESS: Yes, sir I did.

The first step to distributing the property of a marriage is determining the class of that property, i.e. marital or separate. Under Tennessee Code Annotated section 36-4-121, the court must determine in the case of separate property such as the vested and unvested options in play here, the amount and nature of any increase to the value of that separate property and whether such an increase is due to tangible or intangible contributions by each spouse. The statute defines marital property as "that property acquired by either spouse during the course of the marriage ... to including any property to which a right was acquired up to the date of the final divorce hearing." *See* Tenn. Code Ann. §36-4-121 (b)(1)(2001). The value is assessed "as of a date as near as reasonably possible to the final divorce hearing date." The statute goes on to provide:

> In the case of a complaint for legal separation, the court may make a final disposition of the marital property either at the time of entering an order of legal separation or at the time of entering a final divorce decree, if any. If the marital property is divided as part of the order of legal separation, any property acquired by a spouse thereafter is deemed separate property of that spouse. All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.

Tenn. Code Ann. §36-4-121 (b)(1)(A) (2001).

Ms. Norman's reliance on this latter portion of subparagraph (1)(A) is misplaced. The plain language of the statute provides that valuation of the vested and unvested stock options accrued during the marriage and distributed pursuant to the divorce decree are evaluated as close as possible to the final hearing date on the divorce. Neither party challenged the portion of the October order awarding the divorce. The only challenge that has been raised, and raised repeatedly, is the valuation and distribution of the marital property. The options which accrued after the October 19, 2001

-20-

decree are therefore excluded from the marital estate as Mr. Norman's separate property. In ruling on Mr. Norman's motion to alter or amend the findings relative to the stock valuation, the trial court adopted the formula drafted by CPA Michael Dodd attached to Mr. Norman's motion and considered over Ms. Norman's objection. This formula as adopted divides vested and unvested shares thus:

| Option No. | Date Issued | Date Vested | No. of Shares | Mos. Req'd to Vest | Mos. Vested Before Divorce | % to Split | Percent Husband | Percent Wife | Allocated Shares Husband | Allocated Shares Wife |
|---|---|---|---|---|---|---|---|---|---|---|
| H02533 | 1/12/00 | 1/12/01 | 1,900 | 12 | 12 | 100.00 | 50.00 | 50.00 | 950 | 950 |
| H02533 | 1/12/00 | 1/12/02 | 1,900 | 24 | 21 | 87.50 | 56.25 | 43.75 | 1,069 | 831 |
| H02533 | 1/12/00 | 1/12/03 | 1,900 | 36 | 21 | 58.33 | 70.83 | 29.17 | 1,346 | 554 |
| H02533 | 1/12/00 | 1/12/04 | 1,900 | 48 | 21 | 43.75 | 78.13 | 21.88 | 1,484 | 416 |
| H03537 | 1/23/01 | 1/12/02 | 1,925 | 12 | 9 | 75.00 | 62.50 | 37.50 | 1,203 | 722 |
| H03537 | 1/23/01 | 1/12/03 | 1,925 | 24 | 9 | 37.50 | 81.25 | 18.75 | 1,564 | 361 |
| H03537 | 1/23/01 | 1/12/04 | 1,925 | 36 | 9 | 25.00 | 87.50 | 12.50 | 1,684 | 241 |
| H03537 | 1/23/01 | 1/12/05 | 1,925 | 48 | 9 | 18.75 | 90.63 | 9.38 | 1,745 | 180 |

Options number H02533 and H03537 would be eligible for valuation and distribution and the unvested portion would be subject to the formula. The order granting Mr. Norman's motion to alter or amend is affirmed.

## Alimony

The award of alimony is a matter resting within the sound discretion of the trial court. *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn. 2001). That discretion is bounded by the statutory provisions. Tenn Code Ann. 36-5-101(d)(1)(2001)(currently at Tenn. Code Ann. 36-5-121(eff. July 1, 2005)). Ms. Norman takes issue with the trial court's failure to enter formal findings upon the record indicating its consideration of 8 of the 12 statutory factors. She urges that this court require affirmative statements of consideration in the court's order. The statute, however does not contemplate the kind of formalistic micro management required to accede to her request. The most important criteria in the consideration of alimony are the need of the rehabilitated spouse and the ability of the obligor. *Burlew,* 40 S.W.3d at 470-71. There is no showing in the record before us that militates against the trial court's discretion as exercised in determining the equities between the parties and the impact of the "harsh economic realities" of this divorce after eight years of marriage, three hearings and three appeals.

Appellant would agree that she is able to be rehabilitated.  She simply disputes the duration of the award without challenging the trial court's findings concerning her failure to take advantage of the opportunities already given.  As a result, the alimony award is affirmed on appeal.

### Attorneys' Fees and Damages for Frivolous Appeal

Both parties seek an award of attorneys' fees in this action.  Ms. Norman argues that, inasmuch as the trial court granted her a divorce in the first instance and awarded her $30,000 in attorneys fees previously, that she is entitled to another award of fees in this subsequent action.  However, an appellate court will not disturb the trial court's decision absent an abuse of discretion and such abuse of discretion does not appear in this case.  While the appeal by Ms. Norman has not been successful, it is not devoid of merit so as to qualify as a frivolous appeal under Tennessee Civil Annotated section 27-1-122. *See also Wilson v. Wilson*, 987 S.W.2d 555, 556 (Tenn.Ct.App.1998).  The application for frivolous appeal damages is denied.

### Conclusion

This case has received consideration by two trial judges and has three times been before this Court.  Seldom does any court issue judgments that are satisfactory to all of the parties.  This case is certainly no exception.  The trial court on remand has followed the instructions of this Court and in meticulous detail addressed the issues and rendered its decision.  We have carefully reviewed the record on appeal and simply cannot justify, under the abuse of discretion standard governing this appeal, substituting what might be our judgment as to particular details.  The results are sound, and the judgment of the trial court is in all respects affirmed.  Costs of appeal are assessed against the appellant.

_____
WILLIAM B. CAIN, JUDGE