# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs September 26, 2013

## JAMES M. ROBERTS, II v. JACQUELINE R. ROBERTS

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005542-10     James F. Russell, Judge**

---

**No. W2012-02143-COA-R3-CV - Filed November 26, 2013**

---

Plaintiff/Appellant appeals the trial court's division of property and award of alimony in this divorce action.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Kim C. Gilleland, Murfreesboro, Tennessee, for the appellant, James M. Roberts, II.

Scottie O. Wilkes, Memphis, Tennessee, for the appellee, Jacqueline R. Roberts

### MEMORANDUM OPINION[1]

James Miller Roberts, II (Mr. Roberts) and Jacqueline R. Roberts (Ms. Roberts) were married in 1993.  The marriage was Mr. Roberts' second marriage, and Ms. Roberts' first. Two children were born of the marriage, a son in 1995 and a daughter in 2001.  In November 2010, Mr. Roberts filed a complaint for divorce in the Circuit Court for Shelby County.  In his complaint, Mr. Roberts alleged irreconcilable differences and inappropriate marital conduct as grounds for divorce and prayed for a divorce pursuant to Tennessee Code

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Annotated § 36-4-101(3). He further prayed for an equitable division of property and entry of his proposed parenting plan.

Ms. Roberts filed an answer and counter-complaint in March 2011, admitting the existence of irreconcilable differences, denying allegations of inappropriate conduct, and asserting a counter-claim for a divorce on the grounds of inappropriate conduct and adultery. She prayed to be named primary residential parent of the parties' minor children, a division of property that included an award of the parties' marital residence to her, child support, alimony, and attorneys' fees and costs. Mr. Roberts answered the counter-complaint and pled the affirmative defense of condonation.

Following unsuccessful mediation, the matter came to be heard on February 16, 2012. No transcript was made of the February 16 hearing. On February 21, 2012, the trial court held a second hearing wherein the trial court issued oral findings of fact and conclusions of law but took no further proof.

On August 17, 2012, the trial court entered the final decree of divorce, incorporating into its final order its February findings and conclusions. The trial court found that Mr. Roberts had stipulated that he was guilty of inappropriate conduct and granted the parties a divorce pursuant to Tennessee Code Annotated § 36-6-101. The trial court incorporated the parenting plan proposed by Mr. Roberts, determined that Ms. Roberts was not voluntarily unemployed, and set Mr. Roberts' child support at $1,253 per month based on the child support guidelines. The trial court found that neither party owned separate property, that they had divided their household furnishings by consent, and that Ms. Roberts was economically disadvantaged where she currently was unemployed and in "uncertain health." The trial court awarded Ms. Roberts alimony *in futuro* in the amount of $1,022 per month, and found that Mr. Roberts did not have the ability to pay additional transitional or rehabilitative alimony as requested by Ms. Roberts. The trial court also awarded each party the personal property currently in their possession and the financial assets in their respective names, and ordered each to pay any debts he or she incurred subsequent to their separation. The martial residence was awarded to Ms. Roberts. The trial court found that the martial residence was purchased in 2004 for a purchase price in the amount of $175,000; that the outstanding mortgage balance on the residence was $152,714; and that the residence was valued at $138,175 by Ms. Roberts and at $179,500 by Mr. Roberts. The trial court found that Ms. Roberts had no means to provide housing for herself and the parties' children, and ordered Mr. Roberts to pay the house note in the amount of $1,385 per month until the parties' daughter graduates high school or the property is refinanced. The trial court ordered that Ms. Roberts would be given 90 days within the time the parties' daughter graduates high school to refinance the property, and would be awarded all equity existing at that time. The trial court ordered that if Ms. Roberts failed to refinance, the property would be sold and the

equity divided between the parties. The trial court emphasized that the house payment would not be deemed alimony, but as a "preservation of the martial residence as a marital asset." The trial court also awarded Ms. Roberts her attorney's fees and costs upon finding that she had "no liquid assets currently available to her and no income." The trial court also denied a contempt petition filed by Ms. Roberts in January 2012. Mr. Roberts filed a timely notice of appeal to this Court.

## Issues Presented

Mr. Roberts raises the following issues for our review, as presented by him:

(1)     Whether the trial court erred when it ordered the Appellant to make the mortgage payment on the marital residence until the parties' daughter graduated from high school.

(2)     Whether the trial court erred when it awarded 100% of the equity in the martial residence to the Appellee, provided the Appellee refinances the mortgage in her name 90 days prior to the daughter's graduation from high school.

(3)     Whether the trial court erred when it awarded alimony in futuro to the Appellee.

(4)     Whether the trial court erred when it awarded Attorney Fees to the Appellee in the amount of $20,860.00

## Standard of Review

We generally review the trial court's findings of fact *de novo* on the record, with a presumption of correctness, and will not reverse those findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). Insofar as the trial court's determinations are based on its assessment of witness credibility, we will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review of the trial court's conclusions on matters of law, however, is *de novo* with no presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). We likewise review the trial court's application of law to the facts *de novo*, with no presumption of correctness. *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).

In the current case, however, only a partial transcript has been transmitted to this

Court, and that transcript contains only the trial court's findings of fact and conclusions of law. No transcript of the divorce proceedings was made, and no court-approved statement of the evidence has been provided to us on appeal. The record contains no exhibits other than affidavits of the parties that are contained in the technical record and copies of Ms. Roberts' attorney's fees. "It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment, and this Court must therefore affirm the judgment." *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App.2007) (citation omitted). The appellant carries the burden to demonstrate that the evidence preponderates against the judgment of the trial court. *Id*. (citation omitted). The appellant also bears the burden to provide this Court with a transcript of the evidence or a statement of the evidence from which we may determine whether the evidence preponderates against the trial court's findings. *Id*. at 378 (citation omitted). In the absence of a transcript or statement of the evidence, we may reverse the trial court's judgment only if we find that the trial court committed an error of law based on the "technical record" transmitted to us. *Riedel v. Riedel,* No. M2011–01111–COA–R3–CV, 2013 WL 5948021, at *4 (Tenn. Ct. App. Nov. 4, 2013)(citations omitted).

### *Discussion*

We turn first to Mr. Roberts' contention that the trial court erred by ordering him to pay the note on the parties' marital residence and by awarding Ms. Roberts all the equity in the home if she refinances it within 90 days of the parties' daughter's graduation from high school. Mr. Roberts addresses these issues together in his brief, consolidating them into an appeal of the trial court's division of marital property, and we accordingly address them together here. Mr. Roberts asserts the trial court's order amounts to an award in the amount of $113,570 and that the payments "should have been factored into the martial asset division matrix." He asserts that the "marital property matrix changes dramatically with the inclusion of these payments[,]" resulting in an award to Ms. Roberts of approximately 63% of the marital assets. He further asserts that the division is also unfair where it results in a "potential windfall" for Ms. Roberts in the event of a significant increase in the housing market if Ms. Roberts refinances within the allotted time, while a decrease in the market would result in Mr. Roberts incurring 50% of the debt. He does not assert that the trial court erred by awarding the marital residence to Ms. Roberts, but asks this Court to "adjust the division . . . appropriately[.]"

Ms. Roberts, on the other hand asserts that the division of property is fair and that Mr. Roberts' argument is based on "speculation" and fails to take into account that the payments also include interest, taxes and insurance. She also submits that Mr. Roberts' calculation of the resulting division of property is misleading where he fails to take his Federal

Employment Retirement System ("FERS") assets into account. Ms. Roberts contends that the trial court recognized that Mr. Robert has an FERS account, the value of which Mr. Roberts "refused to disclose" and was unknown to the trial court.

The trial court must divide the marital estate equitably. Tenn. Code Ann. § 36–4–121(a)(1)(2010 and 2013 Supp.); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). The factors to be considered by the trial court when dividing the marital estate are set forth in § 36–4–121(c) of the Tennessee Code. An equitable division of marital property does not require a precisely equal division of marital assets, but requires a fair result. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002); *Batson*, 769 S.W.2d at 859. Additionally, the trial court may adjust the division of marital property to assist the economically disadvantaged spouse when there is a disparity between the parties' relative earning capacities. *Robertson*, 76 S.W.3d at 341. We review a trial court's property award under an abuse of discretion standard. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App.2002). An abuse of discretion occurs when the trial court applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on an assessment of the evidence that is clearly erroneous, or uses reasoning that results in an injustice. *State v. Hester*, 24 S.W.3d 1, 35 (Tenn. 2010).

In this case, it is undisputed that Ms. Roberts in unemployed and has no liquid assets. It also is not disputed that Mr. Roberts monthly income is approximately $7,471. Further, the trial court found that Ms. Roberts is not voluntarily unemployed, that she has filed for bankruptcy, and that the proof in the matter demonstrated that she is unemployed due to "multiple serious health problems as well as other forces[.]" The trial court further found that Ms. Roberts has a retirement account valued at $214,000 through her former employer, and that the funds cannot be accessed for years to come. The court also determined that Mr. Roberts has funds and accounts worth approximately $184,000 in military and civilian pensions, and an FERS account "which has an undetermined value . . . which . . . is liquid and reasonably accessible by him." It also found that the value of the marital residence is "sheer speculation." In light of the equities between the parties, including their relative earning capacities and Ms. Roberts' economic disadvantage relative to Mr. Roberts, we find no abuse of discretion in the trial court's division of martial property. We accordingly affirm on this issue.

We turn next to whether the trial court erred in its award of alimony in this case. Mr. Roberts does not assert that he does not have the ability to pay alimony as ordered by the trial court, nor does he assert that Ms. Roberts does not need the alimony ordered. Rather, he asserts that the trial court erred by awarding Mr. Roberts alimony *in futuro* rather than rehabilitative alimony. He asserts that the trial court's findings with respect to Ms. Roberts' health were not supported by the proof, that both parties were 48 years of age at the time of

the divorce, that both were college graduates, and that both held professional careers throughout the marriage. Mr. Roberts does not suggest an appropriate rehabilitative alimony amount or period, however.

A trial court has wide latitude in making an award of alimony. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App.2007). An alimony award depends on the circumstances of each case, and the need of the recipient spouse and the obligor spouse's ability to pay are primary considerations. *Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). When determining the type and amount of alimony to be awarded, the trial court must balance several statutory factors, including those enumerated in section 36–5–121 of the Tennessee Code. Although there is a preference for rehabilitative alimony, the type and amount of an alimony award remain largely within the discretion of the trial court. *Id*. at 470. On appeal, we will not alter a trial court's award of alimony absent a finding of an abuse of discretion. *Id.*

In light of the foregoing discussion with respect to the trial court's division of property in this case, we find no abuse of discretion on the part of the trial court with respect to its award of alimony. As noted above, in the absence of a transcript or statement of the evidence, we presume the trial court's factual findings to be correct. Thus, we presume the trial court's findings with respect to Ms. Roberts' health concerns to be correct, and there is nothing in the technical record to demonstrate that the trial court erred in its findings. Further, it is not disputed that Ms. Roberts has a college degree and had a professional career as a social worker and advisor. Mr. Roberts does not indicate how she might be rehabilitated. We additionally note the trial court's observation that Ms. Roberts requested alimony *in futuro* in the amount of $1,000 per month, plus transitional alimony in the amount of $500 per month for a period of two years, and its finding that Mr. Roberts does not have the ability to pay rehabilitative alimony in addition to alimony *in futuro*. The trial court also observed that its awards would result in "approximately equal" disparities "in terms of income relative to ongoing monthly expenses[,]" and that a return to employment by Ms. Roberts may give rise to a change in circumstance warranting modification. We find no abuse of discretion on the part of the trial court and affirm on this issue.

We turn finally to the trial court's award of attorney's fees and costs to Ms. Roberts. Mr. Roberts asserts that the trial court's award of attorneys fees was not appropriate because "a significant portion" of the "later part" of the fees were generated by a petition for contempt filed by Ms. Roberts in January 2012, which the trial court dismissed as lacking merit. He further asserts that the award amounted to $20,860.00 and that, added to the property division and alimony award, it "reaches the realm of an injustice." Ms. Roberts asserts that only a small fraction of her attorney's fees were generated by the contempt issue, and that the award was equitable in light of the parties' relative financial positions.

The decision to award attorney's fees as an award of alimony *in solido* lies within the discretion of the trial court, and we will not reverse the award absent an abuse of discretion. *E.g., Fickle v. Fickle*, 287 S.W.3d 723, 737 (Tenn. Ct. App. 2008). In its August 2012 order, the trial court found that Ms. Roberts had incurred attorney's fees in the amount of $20,860.00 as set forth in affidavits filed by her counsel. The trial court found these fees to be fair and reasonable, and further found that Mr. Roberts had the ability to pay the fees. Mr. Roberts does not assert that the attorney's fees were not reasonable, and upon review of the detailed fees contained in the record, we observe that fees of approximately $300 were generated by the contempt petition. Finding no abuse of discretion on the part of the trial court, we affirm.

### *Holding*

In light of the foregoing, the judgment of the trial court is affirmed in its entirety. Costs on appeal are taxed to the Appellant, James Miller Roberts, II, and his surety, for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.

_____
DAVID R. FARMER, JUDGE